*Jones* vs. *Stanton.*

## JONES vs. STANTON.

1. The collection of the purchase money of a tract of land will be restrained if it appear that there is a defect in the title, until the purchaser is indemnified against loss, it appearing that the solvency of the vendor is doubtful.

2. One of two tenants in common cannot by purchase of an outstanding title, or of an incumbrance, acquire title to the whole against his co-tenant—such purchase will operate to the benefit of both—and he is entitled to claim contribution of his co-tenant.

## APPEAL from St. Louis Court of Common Pleas, in Chancery.

A. HAMILTON, *for Appellant.*

1st. The agreement set up in the bill varies essentially from that given in evidence. The words *"grant, bargain and sell,"* under the statute of Illinois, do not amount to a *general covenant* of seizen of an *indefeasible estate of inheritance in fee simple, absolute,* but only a covenant against the *personal acts of the grantor,* and for quiet enjoyment. See decisions under a similar statute, 2 Binney 95; 2 Alabama, new series, 535; 1 Smedes & Marshall, 618.

The rule in chancery is the same as at law in relation to a variance between the pleadings and proofs. 5 Wend. 652; McNair et al, vs. Biddle, et al, 8 Mo. Rep. 267.

And where the plaintiff fail to make out the agreement charged, he cannot resort to that confessed in the answer. 2 Vesey sr. 299; 5 Vesey jr. 452; 5 Wend. 650.

2nd. But upon the supposition that the express covenant of warranty forms a part of the plaintiff's case, he is entitled to no relief, as there has been no breach of covenant—he is still in the undisturbed possession of the property, nor is suit even threatened or apprehended. Admr. of Barton vs. Rector, et al, 7 Mo. Rep. 528, and cases cited; 5 Howard, 470, and cases cited; 1 Smedes & Marshall, 618. Is he then entitled to any relief over and beyond his covenants?

3rd. It is true that cases *may* exist in which a purchaser by executed contract, may be allowed an injunction, *without showing any fraud or eviction,* such as the *unexpected insolvency or removal* of the vender, under peculiar circumstances. Here the injunction will be continued until the purchaser can have the question of doubtful title settled. But the danger must be *really apprehended,* and must have been *unforseen and unexpected,* at the time of the conveyance. 2 Dana 278; 6 Monroe 225; 7 Ib. 198–202.

4th. The proofs, so far from establishing the charge of the defendant's insolvency, show that he is abundantly able to meet the amount enjoined, which is about $400. The court does not, in its decree, pretend to find him insolvent; but only says that matter is *doubtful.* 6 Mo. Rep. 360; 1 Smedes & Marshall, 618.

5th. The title was not passed upon in such a manner as can commend itself to this court. The defendant claimed that his title was perfect. It was for the plaintiff to show it clearly bad. 5 Munford 295. If danger be apprehended, the vendee must bring the parties in to assert or relinquish their rights. 1 Dana 308–328.

6th. The finding of the court upon the subject of the comparative value, was without evidence. The answer denied the plaintiff's allegation, and put the plaintiff to proof. The allegation in the answer, that, the land was chiefly valuable for its excellent timber, but that the plaintiff had cut and destroyed it, was responsive to the bill. The true test is, whether the question answered would be proper in a trial at law, whether it would be relevant to the issue, such as

the witness would be bound to answer, and the answer be competent testimony. 1 Hoffman's C. R. 185; 11 Wend. 343. It was incumbent upon the plaintiff to prove on the hearing, all such facts as were not expressly admitted in the answer. 2 Tuck. Com. 483; 3 Paige 545, and cases cited.

Todd, *for Appellee.*

1st. Jones in his answer does not deny, and therefore admits, that his covenants to Stanton are such as are set forth in the bill.

2nd. If, however, under the pleadings, the question can be raised on behalf of Jones, whether he made to Stanton such a covenant of seizen as set forth in the bill, and the place of argument thereof be changed from the pleadings to the evidence produced on the hearing, still it is insisted that the deed of Jones to Stanton, contains the covenant of seizen of an indefeasible estate in fee-simple. For it contains the words "grant, bargain and sell," and was executed in the State of Illinois, where the land is, and by the statute of said State given in evidence, said words in a deed of conveyance of real estate in that State, are declared to be, to the grantee, among other covenants, a covenant of seizen, &c.

Such is the plain meaning of the express language of said statute. And in construing statutes, their express words cannot be nullified, if sensible.

Such also is the meaning, as always understood by the people generally, and by lawyers. Upon such a meaning, conveyancing in said State, and in this State, (under a like statute,) has been founded and practised, to the general abandonment of deeds with full covenants, for so long a time, that the most of the present owners of real estate, must own by such a deed as this, so that the establishment of a contrary doctrine would unsettle, and essentially weaken, almost all the real estate securities in the land.

Jones had no doubt of his having made such a covenant, nor his Illinois solicitor who drew his answer—nor drew it in question by a plea—but undertakes to show that the covenant is not broken—he confesses it and tries to avoid it. Such also was the prevailing opinion in Pennsylvania under a like statute, as may be seen by reference to the opinion of the Supreme Court of State, in the case of Bender vs. Fromberger, 4 Dallas, 436.

3rd. If however, the words "grant," &c., be construed to bind the grantor only as against his own acts, still since Jones sold representing that he had a perfect title, admitted in his answer, and in his answer insists upon it, and shows how he got it, and by that very showing, shows that his title is bad by his own fraudulent acts, he should now be estopped from saying that he had not a perfect title, and then he should be bound by his own showing of that title, which showing proves it bad by his own fraud and act.

4th. Jones did not acquire the title of his co-tenants by the purchase at the tax sale. The attempt was dishonest—violative of the obligations between co-tenants, and a fraud in fact, and enures to the benefit of his co-tenants. 5th John's Ch'y. Rep. p. 388 & 407–408; 4 Litt. 187; 2 vol. Pirtle's Dig. p. 8, n. 23. 3 Greenleaf's Rep. 207, decides, that when a tenant in common gets a title to the land (held in common,) derived from a sale thereof for taxes, by the sheriff, such title enures to the benefit of his co-tenant, so that he can maintain a writ of entry against his co-tenant, claiming to hold the entire land under such a title, for his part thereof—the tax is the debt of both, and he who pays has his action for contribution.

The lands of partners are held by them as tenants in common. 15 J. R. p. 159; 11 Mas. 470. Now in 4 Lit. Rep. 187, it is decided, that if partnership land is sold under an execution against the partners, and one of them purchase it, it does not extinguish the title of the other. Then in the language of the court in said case, *"mutatis, mutandis,"* we would say, "how Jones under a tax sale against himself and his co-tenants, could become the purchaser of a title in himself, so as to extinguish the title of his co-tenant, is what we do not understand. His purchase then is

no more than a bare payment, the singular and solemn formality of the tax sale notwithstanding."

5th. The decree is right, for either insolvency or non-residence of the grantor justifies the interference of a court of equity to prevent his collecting the price agreed, when it appears that his title is bad, if he has covenanted that it is good. 8 Mo. Rep. 622. The evidence shows that Jones is probably insolvent—certainly a non-resident—so the court below found.

Jones, who best knows, dont venture to answer that he is solvent, but refers to a reputation about his means to satisfy Stanton for any liability, at the same time denying all liability. This makes this reputation say, that Jones has got enough to satisfy nothing. His witnesses, especially his lawyer, do not prove his solvency in a way to entitle them to any credit, for they swear to what, from the nature of the thing, they cannot positively know. On the other hand, Stanton's witnesses, interested to know, because creditors, very plainly prove the insolvency.

6th. Jones practised a fraud in fact upon Stanton. For a person, who in selling, represents his title perfect, which is imperfect by reason of his own deliberate fraud, most clearly perpetrates a fraud upon his vendee. Is not a thief, who in selling his stolen goods, represents his title perfect, guilty of deceit and fraud against his vendee?

7th. An action may be brought when the title to only a part fails. 5 J. R. 49. And the covenant of seizen is broken when a tenant in common covenants sole seizen. 7 J. R. 376.

SCOTT, J., *delivered the opinion of the Court.*

In September 1841, Stanton filed in the St. Louis Circuit Court against Jones, his bill for an injunction against a judgment at law for the sum of $408 65, debt and damages, which was recovered by Jones vs. Stanton. By a change of venue the suit was afterwards taken to the Court of Common Pleas. The bill alledged that the consideration of the note was a quarter section of land in Illinois, sold by Jones to Stanton for the sum of $1000. That the amount recovered was the balance of principal and interest due on the said note. It is alledged that Jones is a non-resident of the State, and that his pecuniary circumstances are such as to make it extremely doubtful whether judgments against him would be available. The conveyance from Jones to Stanton contained the words "grant, bargain and sell," and a covenant of warranty against the claims of all persons whatsoever. By a statute of Illinois, the words "grant," "bargain" and "sell," in a conveyance of any estate of inheritance, are adjudged to be an express covenant to the grantee, that the grantor was seized of an indefeasible estate in fee simple, freed from all incumbrances done or suffered by the grantor, as also for the quiet enjoyment of the grantee against the grantor, his heirs, &c., unless limited by express words contained in such deed. The tract of land conveyed by Jones to Stanton, was granted by John Rice Jones to his two sons, G. W. Jones, the complainant, and W. P. Jones, as tenants in common. W. P. Jones has since died, leaving brothers and sisters. Jones represented

that he had a good title to the land sold to Stanton.     The bill prays for an injunction and general relief.

Most of the facts stated in the bill are admitted by Jones.     As to his alledged inability to meet his engagements, he says he will be able to pay all damages that may be recovered from him for any breach of any covenant he may have made with Stanton.     Including himself, his brother left six brothers and sisters, or descendants from them.     That Stanton has entered upon the land and keeps possession, and has used a great deal of timber which was valuable, and maintains that he has a good title to the whole tract of land, having purchased his brother's half of it at an Auditor's sale, where it was sold for the payment of taxes due on it.

A replication having been filed to the answer, the parties went to trial. The deed from John Rice Jones, the father, to G. W. & W. P. Jones, was read in evidence, as was also the Auditor's deed.     The evidence with regard to the ability of Jones to pay his debts was conflicting.     Some believed him to be solvent, and others insolvent.     A creditor, who had a claim against Jones, could get no other satisfaction than some lands in Illinois, the title to which afterwards failed.

An injunction was granted, restraining the collection of the judgment until a good title should be conveyed to Stanton.     From this decree Jones appealed.

The injunction in this case having been granted prior to the taking effect of the late act relative to injunctions restraining the collection of the purchase money for real estate, the title to which has failed, it has been submitted without reference to that act, and as though it was clear of its provisions.     There is no doubt of the general principle that a purchaser of land who has taken a conveyance, will not be relieved against the payment of the purchase money on the mere ground of a defect of title, there being no allegation of fraud in the sale, nor any eviction. Under such circumstances, the party is driven to his remedy at law on the covenants in his deed.     In a case free from fraud, and where there is no covenant, the purchaser will be without remedy in the event of a failure of his title.     This doctrine is fully sustained by the case of Abbott vs. Allen, 2 J. C. Rep. 519.     In the cause just referred to, Chancellor Kent declines expressing an opinion, whether or not an injunction should be granted restraining the collection of the purchase money, where there was an existing incumbrance which appeared to admit of no dispute.     Such a case, he says, may form an exception to the general rule, and the cases seem to look to that point.     In the construction of

our statute of conveyances, a general warranty is not restrained by the covenants contained in the words "grant," "bargain" and "sell," as has been held by this court in the case of Alexander vs. Schriber, 10 Mo. Rep. It not appearing that the statute of Illinois has received a different construction by her courts, we must construe it as ours has been. Then there is a covenant of warranty, with an admitted defective title. There is no difference in principle between this case and that of an incumbrance whose existence is not denied. . It is assumed that a defect in Jones' title exists, because he admits that to five-twelfths of the land conveyed, his only title is a purchase from the Auditor for the taxes due on the whole tract. Jones being a co-tenant with his brother's heirs, was as much bound to pay the taxes as they were. Each of the owners were severally liable for them. If a tract of land is mortgaged for a joint debt by two, will the discharge of the incumbrance by one of them vest the legal title in him to the whole? He who pays the debt is not without recourse against his co-debtor; but by doing that which he was bound to do, he cannot, under the pretence that another was liable to do the same thing, deprive him of his rights. In the case of Williams vs. Gray, 3 Greenleaf, 207, two non-residents held in common an unsettled tract of land, which without their knowledge, was sold for the non-payment of the State taxes; and they afterwards made partition by mutual deeds of release and quit-claim, in common form; after which one of them, within the time of redemption, paid the tax to the purchaser at the sheriff's sale, from whom he took a deed of release and quit-claim to himself alone, for the whole tract; it was held that this payment and deed enured to the benefit of them both; that the party paying had his remedy by action against the other for contribution; and that he who had not paid might still maintain a writ of entry against the other, for his part of the land. So in the case of Van Horne vs. D. Fonda, 5 J. C. Rep. 388, that where two devizees are in possession of land, under an imperfect title, devised to them by their common ancestor, one of them cannot buy up an outstanding or adverse title, to disseize or expel his cotenant, but such purchase will enure to their common benefit, subject to an equal contribution to the expense.

Upon the whole, taking into consideration the admitted defect in the title of Jones, and the great doubt existing in relation to his ability to pay his debts, we think we are warranted in requiring a stay of the collection of the debt, until Jones gives a bond with security, indemnifying Stanton against any loss he may sustain in consequence of the defect in his title to the land conveyed to him. 2 Tuck. Com. 475. Decree accordingly, the other Judges concurring.