HENRY BECKER, Appellant, v. GEORGE BECKER et al.; WILLIAM R. ORTHWEIN, Administrator, Appellant.

**In Banc, February 10, 1914.**

1. **COTENANCY: Dissolved by Foreclosure Sale: Trustee.** A bid by one of the heirs at a public sale of land under a deed of trust placed thereon by their ancestor, after formal notice of foreclosure at the instance of the holder of the unpaid notes, and in no wise brought about by the bidder, is in law the bid of a stranger; and where no unfair or undue advantage

is taken by him of his cotenants, and they refuse to make any effort to pay the debt and disclaim any interest in the property, he is not turned into a trustee for them by buying for himself and receiving a deed; and in such case another cotenant does not have the legal right, upon tender to the purchaser or into court for him of his aliquot part of the foreclosure price, to have a decree of court vesting such cotenant with the title to an equal aliquot part of the land.

2. ————: Suit to Establish Trust Relation: Brought by Another: Good Faith. A suit brought by an heir of the debtor to have himself declared a cotenant in land sold under a deed of trust to secure a debt created by his deceased father and bought in by and conveyed to his brother, is not brought in good faith, if in fact brought and prosecuted by the holder of an unsecured note given by the same debtor, for the purpose of having both the heir and brother declared cotenants, in order that he may subject the land to the payment of his debt, there being no enforceable agreement between the brother and said heir that the brother would purchase the property at the foreclosure sale and hold it as trustee for himself and the other heir as cotenants, and the debt having never been allowed by the probate court against the debtor's estate and no administrator appointed until after the foreclosure sale, which was seventeen years after the debtor's death. Nor can the administrator maintain such a suit, under the circumstances.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock*, Judge.

AFFIRMED.

*Barclay, Fauntleroy, Cullen & Orthwein* and *William R. Gilbert* for appellants.

(1) One cotenant cannot buy in an outstanding title to the exclusion of the other cotenants. Kohle v. Hobson, 215 Mo. 213; Hinters v. Hinters, 114 Mo. 29; Allen v. De Groodt, 105 Mo. 452, 98 Mo. 161; Tisdale v. Tisdale, 2 Sneed, 596. (2) And when such a purchase is made, it inures to the others upon contribution. Nalle v. Parks, 173 Mo. 625; Allen v. De Groodt, 105 Mo. 452; Hinters v. Hinters, 114 Mo. 26. (3) And equity will declare the purchasing cotenant to have purchased for the benefit of all. Nalle v. Thompson,

173 Mo. 616; Howard v. Scott, 225 Mo. 718; Peak v. Peak, 228 Mo. 536. (4) A purchase of an outstanding interest by one cotenant is a redemption from the lien of the outstanding charge. Kohle v. Hobson, 215 Mo. 219.

*George F. Beck* for respondent.

(1) Where real estate is sold at public auction under a deed of trust, the purchaser in no sense buys an equity of redemption, an incumbrance, or an outstanding title; it is a purchase of the entire title as it existed at the time the deed of trust was executed. Starkweather v. Jenner, 216 U. S. 524; Aubuchon v. Aubuchon, 133 Mo. 260; Kennedy v. De Trafford, A. C. (1897) 180. (2) Where the common property was sold under a paramount title, owned in good faith by a third person, at a public sale, either under legal process or a power in a deed of trust, the sale being in nowise the result of collusion, fraud, or deceit, the cotenancy is destroyed, and either one of the cotenants is, and ought to be, free to act for himself, and purchase the paramount title for his own exclusive benefit. Aubuchon v. Aubuchon, 133 Mo. 260; Starkweather v. Jenner, 216 U. S. 524; Kennedy v. De Trafford, A. C. (1897), 180; Hunter v. Allen, Irish Reports (1907), 212; Jackson v. Baird, 148 N. C. 29; Coleman v. Coleman, 3 Dana (Ky.), 398; Alexander v. Sully, 50 Iowa, 192; Biss v. Biss, 2 Chancery, 40; Stephens v. Ells, 65 Mo. 461. (3) Tenants in common do not, as such, stand in a fiduciary relation towards each other; a fiduciary relation, or a partnership, may be shown to have arisen, or to have been created, among them by conduct or by agreement; but, if so, the inference must be drawn from other facts than the mere existence of a tenancy in common in the lands or premises. Hunter v. Allen, Irish Reports (1907), 212; Kennedy v. De Trafford, A. C. (1897), 180; Biss v. Biss, 2 Chancery (1903), 57. (4) Administrators are forbidden from

in any way interfering with the rights of the heirs to the real estate until they have been ordered to take charge of the real estate by an order of the probate court. It is not enough that it is shown that the personal property is insufficient to pay debts and that the real estate must be sold for that purpose. It must appear that the probate court has made the order. Grant v. Hathaway, 215 Mo. 141; R. S. 1909, sec. 139; 2 Woerner on Administration, p. 715, sec. 338; Thorp v. Miller, 137 Mo. 231; Hall v. Bank, 145 Mo. 418. (5) The object of the petition or cross-bill of the administrator is to subject the real estate of defendant George Becker to the payment of debts of the deceased. The circuit court has no jurisdiction to order the sheriff to sell real estate to pay claims allowed by the probate court. Jurisdiction is conferred by statute exclusively in the probate court, and the laws of administration relating to the sale of real estate for the payment of debts provide fully the procedure whereby such sales are to be made. Jarvis v. Russick, 12 Mo. 63; Matson v. Pearson, 121 Mo. App. 120; Scott v. Royston, 223 Mo. 579; Macey v. Stark, 116 Mo. 494; Camedon v. Plain, 91 Mo. 117; French v. Stratton, 79 Mo. 560; Priest v. Spier, 96 Mo. 111; Dodson v. Scrogg, 47 Mo. 285; Strode v. Gilpin, 187 Mo. 383. (6) Administrators' powers are conferred upon them by statute, and there is no statute authorizing administrators to institute suits to recover possession of real estate, or to clear the title thereof that the same may be sold for the payment of debts. In selling real estate to pay debts, the administrator sells whatever right, title and interest the deceased may have had in the same, and his deed conveys only such title. A purchaser at an administrator's sale has the right to sue in equity, to remove a cloud upon the title, and in ejectment, for possession. Grant v. Hathaway, 215 Mo. 141; Thorp v. Miller, 137 Mo. 231; Aubuchon v. Lorey, 23 Mo. 99. (7) A creditor may institute a proceeding to set aside.

a sale on account of fraud, and if successful, the administrator may treat the property thus uncovered as assets of the estate. Mill Co. v. Sugg, 169 Mo. 130. (8) The charge of fraud is a mere conclusion of the pleader and states no cause of action. Hardwicke v. Hamilton, 121 Mo. 465; Jopling v. Walton, 138 Mo. 485; Phillips v. Stewart, 59 Mo. 491; Keith v. Browning, 139 Mo. 190. (9) Fraud is never presumed, but must be alleged and proved. The relief sought by appellant is not based upon the charge that respondent misled him to prevent his bidding at the sale, and he is limited to the fraud alleged. Hardwicke v. Hamilton, 121 Mo. 465. (10) The administrator can maintain his suit only upon the cause of action stated in his cross-bill. As the cross-bill is not based upon the theory that the defendant George Becker bought in the property for the administrator or for Mrs. Haesle, he is not entitled to maintain the same. (11) If Mr. Becker bound himself by any agreement to pay Mrs. Haesle her claim, she only would be entitled to assert her right, and that, too, only by an independent suit. (12) If the declaration of George Becker is held to be an agreement to pay Mrs. Haesle her claim, it is void because there was no evidence of an agreement in writing. It is nothing more than a declaration of intention to pay the debt of the father out of the proceeds of the sale of the real estate owned by Henry and himself as heirs of the deceased. R. S. 1909, sec. 2783; Hammond v. Cadwallader, 29 Mo. 170. (13) It was a mere parol declaration and is null and void under the laws of this State which provide that an express trust in lands can be created only by an instrument in writing. R. S. 1909, sec. 2868; Hammond v. Cadwallader, 29 Mo. 166; Mansur v. Willard, 57 Mo. 347; Ewing v. Parrish, 148 Mo. App. 492; Woodford v. Stephens, 51 Mo. 443; Taylor v. Von Schraeder, 107 Mo. 206. (14) Even if the declaration of intention of Mr. Becker amounted to a promise to pay Mrs. Haesle's claim or

a promise to buy in the property for her, and that he thereby constituted himself a trustee for her, still it was a mere gratuitous statement founded upon no consideration.

WALKER, J.—Henry Becker brought suit in equity in the circuit court of the city of St. Louis against his brother, George Becker, for an accounting and permission to pay into court for the benefit of the latter, one-half of whatever amount might be found to be due on account of the foreclosure of a deed of trust on a lot in said city claimed by plaintiff to be owned by himself and defendant as tenants in common as sole heirs of their father George Becker, Sr., and which lot had at said sale been bought by defendant; that plaintiff be decreed to be the owner in fee of one-half of said lot and same not being susceptible of partition that it be sold and the proceeds divided between the parties.

Rufina Becker, the mother of said parties, was also made a defendant, but her subsequent death eliminates from consideration whatever interest she may have had in said property.

One William R. Orthwein, one of the counsel for plaintiff, asked and was granted leave to be made a party defendant, alleging in his application that as administrator of George Becker, Sr., to which position it appears he had been appointed by the probate court of the city of St. Louis, he had some interest in said property and his application was by the court granted.

George Becker, the principal defendant, filed an answer to plaintiff's petition, and defendant Orthwein filed what is termed "an answer and a cross-bill," to which defendant filed a reply.

Upon the pleadings thus filed, the case was heard by the circuit court and the petition of the plaintiff and the answer and cross-bill of the defendant Orthwein were dismissed, and a decree rendered in favor

of the defendant George Becker; the plaintiff, and defendant Orthwein, as administrator, thereupon appealed to this court.

The material allegations of the pleadings are sufficiently set forth in the statement of facts.

In March, 1888, George Becker, Sr., the father of plaintiff and defendant, borrowed $400 from the St. Paul Benevolent Society, hereinafter referred to as the Society, and gave a deed of trust on a small lot or parcel of ground having a frontage of twenty-five feet by a depth of 100 feet on Lyons street in the city of St. Louis, on which there was a building numbered 2853. The sons were then grown men and the house referred to was occupied as a homestead by the father and mother. The $400 was borrowed to enable the plaintiff to engage in a business enterprise and was used for that purpose. The father died in 1893 and at the time of his death the loan was unpaid. Plaintiff paid the interest on same until 1897, and from 1896 until the suit was brought to foreclose the deed of trust in 1910, plaintiff, who was a widower with a half-grown son, lived on the premises with his mother without the payment of rent, and contributed nothing to the repair of the property. The last payment of interest on the loan was made during 1907 by the mother of plaintiff. At the time of the foreclosure of the deed of trust, four years' interest remained due and unpaid on the loan.

In January, 1909, the Society, through its secretary, repeatedly notified the plaintiff and his mother of the default in the payment of interest, but nothing was done in the matter. Plaintiff was solicited by the defendant to assist in paying the debt, either by a sale or the making of another loan, but plaintiff refused to do so, and defendant requested the secretary of the Society to defer the foreclosure to enable defendant to have an opportunity to sell the property and pay the loan; failing in this, the Society again not-

ified the parties that no longer time would be given and that steps would be taken to foreclose the deed of trust and sell the property to satisfy the debt.

The defendant thereupon again notified the plaintiff of his inability to sell the property or to procure a second loan, and that defendant in the event of a foreclosure, intended, if possible, to borrow money and buy in the property to protect his own interest therein. The plaintiff replied that he, plaintiff, had received his share of the property and that the defendant could proceed as he thought best. The said Society on the 13th day of April, 1910, after complying with the conditions of the deed of trust and giving actual notice to all the parties, proceeded to sell and did sell the lot in question to satisfy its loan. The property was bought at the foreclosure sale by a Mr. Gramann, who paid the trustee the amount of the debt and received a deed to the property. The purchaser then executed a deed of trust on the property for $725, and conveyed same by quitclaim deed to George Becker, the defendant.

On April 30, 1910, the plaintiff and the defendant George Becker went to a Mr. Hannauer's office, who was the agent of the Society, where the plaintiff was fully advised of the foreclosure sale and that the property had been transferred to the defendant and that he was to secure a loan with which to pay the bid and costs. The loan, costs and expenses of the foreclosure were checked over and explained to the plaintiff, and he gave the trustee his receipt for his share of the surplus amount of the bid after the payment of the debt and costs. At this time, in the presence of the plaintiff, the defendant George Becker executed a new deed of trust on the lot in question, for $1100, $725 of which was to be in payment of the purchaser's bid at the foreclosure of the deed of trust, the additional $375 was to be expended in repairing the property and putting it in a condition for renting.

The deed of trust made at the time of the sale and purchase of the property by Gramann was released when defendant gave the new deed of trust for $1100 on the property. The defendant then proceeded to repair the property, using the $375 for that purpose, and in paying the delinquent taxes. In making the repairs defendant employed the plaintiff and paid him for his time and labor. Plaintiff's attitude throughout the entire transaction was indicated by him in the remark to defendant that he had received his share in the property and manifested no further interest in it. Plaintiff's lack of interest may be best determined by reference to his testimony at the trial. The plaintiff upon being examined by his counsel was asked:

"Q. Please tell the court what George Becker said, if anything, to you, before this sale came off— where he said it—as to what he was going to do in regard to buying it up." To which plaintiff replied: "A. I will throw my name out of it."

"Q. What did he say? A. He says, 'I will buy in the property.' "

Counsel for defendant then interjected this question: "When was this conversation? A. Right after the sale."

At which juncture the court interposed this inquiry of the plaintiff: "Q. What did he say before the sale? A. He (defendant) says, 'I will divide up with your mother-in-law, Mrs. Haesle; I will buy the property in, and I will pay your mother-in-law, and whatever comes out of it I will divide with you, amongst the both of us;' that is what he said; that is what my brother, George Becker, said."

"Q. (By counsel for plaintiff): "When was the first time that George Becker claimed to own the property by himself? A. After the sale was made, and we got the papers from Mr. Hannauer.

"Q. When did he tell you that he claimed to own it? A. When I met him up at Mr. Hannauer's office.

"Q. That was after the sale had been made? A. That was after the sale had been made; yes, sir.

"Q. What did he say to you, Mr. Becker? A. He says, 'I bought the property, and you and I will go to work and get the property fixed up and we will sell it and divide it up.'

"Q. That was after the sale? A. Yes, sir.

"Q. When did he first claim that he bought the property in for himself, and you didn't have any interest in it? A. Some time in May, last year.

"Q. On May 21st (1910) what did he say? A. 'We will fix it up and after we get it straightened out we will go to work and sell it and divide up amongst the both of us, and pay Mrs. Haesle off;' he says, 'I will crack my whip; I have got what belongs to me now. I will crack my whip and let somebody else come and look after the things.' He says, 'Let them all crack their whips, the property belongs to me.'

"Q. What did you do when he told you that? A. I thought I would leave the thing go as it is, then, and I would not bother about it; and I told my son about it, and I went up to see Mr. Cullen about it."

On cross-examination plaintiff in answer to the question: "You have no further interest in this litigation, now, have you?" answered: "Not that I know of."

This is in the main the testimony of the plaintiff in regard to this transaction. The defendant on his direct examination stated in substance: That he had received notice from the Society demanding payment of the deed of trust; that his first notice of the demand for payment was sent to him by the secretary of the Society, stating that four years' interest was due on the debt. Subsequently, the plaintiff told defendant that he had also received notices that four years' interest was due on the property, and that the Society was going to sell it if they did not come and pay the interest; that defendant went down to see the plaintiff,

who was living on the premises, and told him unless the interest was paid the property would be sold; this was in November, 1909, and defendant said to plaintiff: "What are you going to do about it?" Plaintiff replied, "I am not going to do anything about it." Defendant said, "Why?" To which plaintiff replied: "I will let everything go to h——." To which defendant said: "There is no use of doing that. The debts must be paid, and something has to be done." To which plaintiff replied: "You do as you please about it—whatever you think is best." On further examination defendant testified that when the Society was insisting on the payment of the debt he talked to plaintiff, and the latter said: "I ain't got nothing to do with it any more. You see you get yours; I have got mine; I haven't got any more to do with the property." On cross-examination the defendant was asked: "Q. Now, when the property was going to be sold, you made arrangements to buy it in, didn't you—for somebody to put up enough money to buy it in for you; that is a fact? A. I didn't make no arrangement—I could not sell it anywhere else, and then I made arrangements with them. Q. Now, you didn't have any agreement with Henry, did you, that you should buy that property in for yourself? A. I did. Q. You did? A. Yes, sir. I told him that if I could not sell the property to the breweries, I says, 'I will buy it in for myself, Henry;' and he says, 'All right; you do as you please and whatever you think is best.' Q. 'Do whatever you think is best?' A. Yes. Q. That was before the sale was had? A. And before the property was sold. Q. Now then, the property was taken in Mr. Reising's name, wasn't it, at the sale, and there was a deed of trust for seven hundred and twenty-five dollars put on it, and later it was quitclaimed to you, and then you put a deed of trust of eleven hundred dollars on it, and three hundred and seventy-five dollars were spent under Mr. Hannauer's

directions for repairs, is that correct? A. Part of it was spent, yes, sir. Q. Most of it was spent for repairs? A. Most of it was spent for repairs, yes, sir.''

In regard to the claim of Mrs. Haesle, to which reference has been made in the testimony, it appears that in 1888 a Mrs. Haesle, the mother-in-law of the plaintiff, loaned George Becker, Sr., the father of plaintiff and defendant, $1000. It does not appear whether this was evidenced by note or was an open account. It is clear, however, that the property in question was not pledged to secure its payment. On this debt no interest had been paid since 1898. While the claim has properly nothing to do with the case at bar, much of the testimony was in regard to it and to an attempt to show that defendant had agreed to pay same. It is not improper to note in this connection that letters of administration were not taken out on the estate of George Becker, Sr., until April, 1910, about two weeks after the foreclosure and sale of the lot in question, at which time, as before stated, they were granted to William R. Orthwein, one of the counsel for plaintiff. The claim of Mrs. Haesle, in the sum of $1000, was allowed in the probate court against his estate, it being the only demand presented. There is nothing in the record to show that any order was made by the probate court in regard to the real estate belonging to the estate of George Becker, Sr.

I. *Cotenants Purchasing Common Property.* Plaintiff's contention is that the defendant bought the lot in controversy at the foreclosure sale under the deed of trust as a tenant in common with the plaintiff, and that he, therefore, holds the same in trust for the plaintiff to the extent of the latter's interest upon his contributing to the defendant his just proportion of the amount necessarily expended in the acquisition of the title through the removal of the incumbrance. In the absence of any qualifying facts, the application of

this rule would be appropriate in this case, it having been so announced by this court in many cases from Jones v. Stanton, 11 Mo. 433, to Peak v. Peak, 228 Mo. 536. The foundation of this rule is the good faith and duty required of persons sustaining such relations of trust as should exist between tenants in common. Their rights in the property being severable, the interest of each may be sold by the owner's voluntary act or under process of law, yet all are entitled to joint possession and control, and good faith forbids either by any act of his own to disseize or dispossess another.

Following this rule to its legal conclusion, the heirs of an intestate, upon his death, take the land of which he died seized in common, and their duties, which are reciprocal, immediately arise. The fact must not be lost sight of, however, that the estate does not vest in them absolutely, and it may be divested entirely if the land is taken into the custody of the courts and subjected to the payment of the debts of the deceased, the appropriation of the title of the land in such an instance being as it came directly from the ancestor and not as it came from the heirs. An order of a court for the sale of land for the payment of debts will sever the relation of cotenancy, and one who purchases at a sale under such order thereby acquires the entire title regardless of the equity of redemption or the incumbrance. This is true for the reason that the order of the court for the sale of the land takes precedence over the cotenancy and subordinates the rights of the cotenants to the paramount right to appropriate the property for the payment of debts. This was what was held by this court in Aubuchon v. Aubuchon, 133 Mo. 260; an appropriate illustration deduced from the reasoning in the Aubuchon case is that "the right of one heir to purchase for his exclusive benefit is analogous to that of a tenant in common to purchase at a sale of the property under an

order of sale in partition,'' a right which is recognized in Stephens v. Ells, 65 Mo. 456, in which it was held that a sale under an order of partition dissevered the cotenancy. In such a case, says the court, ''all the world is invited to bid, and among others the cotenants, or any one of them. A bid from one of them occupies the same footing as a bid from a stranger.'' Judge NAPTON also, in Stephens v. Ells, supra, in discussing this question, says in effect that the payment of money to remove a tax or lien by a cotenant during the cotenancy, or the expenditure of money to preserve the common property or a voluntary partition presents entirely different considerations, citing Jones v. Stanton, supra, and Picot v. Page, 26 Mo. 398. Nothing is said, however, as to the application of the rule in a case where the realty is sold at public sale after formal notice at the instance of the holder of the notes to foreclose a deed of trust, and is purchased by a cotenant. No valid reason seems to exist why the exception should not apply to a cotenant purchasing under such circumstances as in a sale under an order of court. The mere order of the court for the sale of land belonging to an estate to pay debts or in partition can afford no more opportunities for a fair and free sale than are offered by a sale to foreclose a mortgage or deed of trust. In fact, equal opportunities are afforded bidders in either case, as publicity, which fosters equal opportunity, and is the moving cause of the exception in the one class of cases, is present with equal force in the other. The Supreme Court of the United States in passing upon this question in Starkweather v. Jenner, 216 U. S. 524, held that the rule which turns a cotenant into a trustee who buys for himself an outstanding title, does not apply so as to prevent a tenant in common from purchasing the common property at a public sale under a power in a deed of trust where no undue or unfair advantage is taken of cotenants.

Cases decided by our own court in which cotenants have been held to become trustees for others upon the purchase by the former of the common property, will be found, upon examination, to present other features than mere cotenancy to create the trust relation. To illustrate: In Peak v. Peak, 228 Mo. 536, a life tenant bought an outstanding deed of trust on the common property, caused the trustee to foreclose, and took the title in a third person, who afterwards conveyed to the life tenant. One of the remaindermen was insane and at the time confined in an asylum. Held, generally, that it was a fraud for the life tenant to cause the deed of trust to be foreclosed and buy at the sale, thus cutting out the remaindermen.

In Howard v. Scott, 225 Mo. l. c. 718, the parties were joint owners of a tract of land incumbered by a mortgage to secure the payment of three notes. Scott paid Howard one-half of each of the notes, with the understanding that the latter would pay them in full. Howard paid one note, caused the mortgage to be foreclosed to pay the others, had the land sold and bought by another, who transferred it to him. The court held that Howard's conduct was a fraud on Scott and that the former held the land in trust for the latter to the extent of his interest.

In Kohle v. Hobson, 215 Mo. 213, the life tenant in possession permitted land to be sold for taxes. The husband of one of the tenants in common procured a third person to buy the property, and before the time for the redemption of the certificate of purchase had the certificate assigned to him. Suit was brought to redeem by one of the cotenants who was a minor at the time of the tax sale. Held, that the purchase of the certificate of redemption did not confer title and that its purchase by a husband of one of the cotenants before the time for redemption created a trust which inured to the benefit of all of the cotenants.

Nalle v. Thompson, 173 Mo. 595, and Nalle v. Parks, 173 Mo. 616, are companion cases. Nalle and Cahoon, lawyers, held title to certain lands conveyed to them in payment of a fee, subject to deeds of trust. Cahoon agreed to pay off the incumbrances and that they would hold the land as tenants in common, share and share alike. Cahoon bought the deeds of trust, caused them to be foreclosed and bid in the land for his own benefit, but never notified his cotenant of his purchase nor asked him to contribute. The latter knew nothing of Cahoon having acquired the title until long afterwards. Cahoon secured an unfair advantage over Nalle by buying the deeds of trust, foreclosing same and acquiring title to the land for his own benefit without notifying Nalle and giving him an opportunity to contribute. Held, that Nalle was entitled to relief in equity.

In Hinters v. Hinters, 114 Mo. 26, a cotenant in possession who was receiving all the benefits of real estate neglected to pay the interest on notes secured by deed of trust and induced the holder to foreclose and sell. All the other cotenants were minors. Upon the sale, the holder of the notes bought and subsequently conveyed the land to the contenant in possession. Held, it was a fraud for the cotenant in possession not to protect the property from sale and that upon his purchase he held title in trust for the other cotenants.

These cases show that grounds of relief existed in each other than the interest of cotenancy.

There was no semblance of fraud or even unfairness in the conduct of the defendant in this transaction. The foreclosure of the deed of trust was made, not on his initiative, but by the holder of the note (the St. Paul Benevolent Society) after a four years' default in the payment of interest. Formal notice was given as required by the deed, and the property was sold at a public sale free and open to all bidders. Un-

der this state of facts, it is straining the rule to hold that the purchase of the property by the defendant was in trust for the plaintiff to the extent of his interest. However, we are not required to except the case at bar from the general rule in regard to the purchase of the common property by a cotenant, to hold that defendant did not take title to same in trust for plaintiff. Defendant sought repeatedly when notified that the deed of trust would be foreclosed, to secure the assistance of plaintiff, either in selling the property at private sale, or in securing a loan to remove the St. Paul Benevolent Society's incumbrance. Plaintiff absolutely refused to render any assistance, saying at times that defendant "should go ahead and do as he pleased in regard to the matter, that he [plaintiff] had gotten his interest out of the property and defendant could now get his;" and at other times that he (plaintiff) "was not going to do anything; that he would let everything go to h——." He makes no direct denial of these statements, but says that before the sale defendant said he would buy in the property and after it was straightened up they would sell it and divide the proceeds; and that after the sale defendant said he had bought the property for himself and they could crack their whips. Under all these facts, plaintiff's testimony in regard to defendant's statements does not bear the impress of truth, especially in view of his subsequent conduct and testimony. When the defendant went to secure the loan with which to pay off the bid and take a transfer of the property, the plaintiff accompanied him and stated to the agent of the St. Paul Benevolent Society and counsel that he understood the entire matter, made no objection to same, joined defendant in receipting the agent for the surplus of the purchaser's bid left after the payment of the incumbrance and costs, and, when defendant subsequently had repairs made on the property, plaintiff was engaged to make them and was paid for same

by defendant. At no time until this suit, did plaintiff raise any question as to defendant's absolute title to the property. At the trial, plaintiff testified that he "had no further interest in the litigation," referring to the case then on trial. This conduct and testimony, coupled with the fact that plaintiff did not bring this suit to establish his interest in the property, but that same was brought to facilitate the collection of the Haesle claim against the estate of George Becker, Sr., will appear as the facts are developed in their order.

Plaintiff's repeated declaration to defendant when the latter was endeavoring to secure his assistance to sell the property or remove the incumbrance that he (plaintiff) "had gotten his interest out of the property and defendant could now get his," is explained by the fact not disputed that the debt contracted by Becker, Sr., with the St. Paul Benevolent Society and secured by deed of trust on the property, was for plaintiff's benefit and was in fact plaintiff's debt. This debt having been paid by defendant upon the foreclosure of the deed of trust as a last alternative, without any unfairness or fraud, and the property thus freed from the lien, the plaintiff will not in equity and good conscience be now heard to complain that he is entitled, after his refusal to assist in the removal of the incumbrance on the property and his renunciation of any claim thereto, to establish an interest in the property. The maxim that he who seeks equity must do equity, finds appropriate application in this case.

II. *The Haesle Claim.* There is not only express testimony but a succession of obviously pertinent facts which show that the suit at bar was not brought primarily to establish plaintiff's interest in the property in question, but to afford an opening wedge for the payment of the claim of Mrs. Haesle out of any surplus that might be left after the sale of the property and the payment of the incumbrance thereon, if such

sale was decreed or partition ordered in the suit at bar. The Haesle claim was based on the alleged loan of $1000 claimed to have been made in 1888 by a Mrs. Haesle, plaintiff's mother-in-law, to his father, George Becker, Sr. Whether evidenced by note or open account the record does not disclose. Certain it is that it was secured by no lien upon the property in controversy and the interest thereon had not been paid since 1898, or about thirteen years before the institution of this suit. We are not urging the bar of time against this claim, being mindful of the rule that the statute does not run on a demand between the debtor's death and the commencement of administration, i. e., it did not, until the enactment in 1909 of sections 188 and 189, Revised Statutes 1909, but the facts connected with the administration of the estate of Becker, Sr., plaintiff and defendant's father, the commencement of administration thereon seventeen years after his death and the prompt allowance of the Haesle claim as the only demand against the estate, render reference to the lapse of time during which this claim lay dormant peculiarly appropriate to a discussion of the facts in this case. During all of the time intervening between the death of Becker, Sr., in 1893, to the date of the sale of the property in 1910, Mrs. Haesle lived in the immediate neighborhood of the property and no effort was made by her or anyone for her to collect the alleged claim. On April 13, 1910, the St. Paul Benevolent Society, unable to collect the interest on the loan it had made on the property, foreclosed its deed of trust, and upon defendant's securing a loan, the property was transferred by the purchaser to him. Presto! Activity is evident all along the line in regard to the Haesle claim. One Flotman, a son-in-law of plaintiff, flits upon the scene. Introduced as a witness for plaintiff at the trial, he testified that he had a talk with defendant about a year before the sale of the property and the latter said he was going to take

care of Mrs. Haesle; that a couple of weeks after the sale or about April 27, 1910, witness was informed by plaintiff that defendant had bought the property in for himself, and witness then went to see a law firm about the matter. On the 29th day of April, 1910, two days later, an administration is commenced on the estate of George Becker, Sr., and one William R. Orthwein is appointed administrator and the claim of Mrs. Haesle, the only one presented, is allowed against the estate. Later the suit at bar is brought by the law firm which plaintiff had consulted, to establish plaintiff's interest and said William R. Orthwein comes to the fore with an answer and cross-bill as administrator of the estate of George Becker, Sr.—under what authority is not indicated in the record or suggested in the statement or brief. In the pleadings said Orthwein appears as administrator, in the briefs as one of the counsel for plaintiff, and during the trial in the like latter capacity, but solicitous, as evidenced by the examination of witnesses and argument, to establish the fact that defendant has agreed to pay the Haesle claim. This is, in truth, the burden of the inquiry made by counsel for plaintiff throughout the trial. These facts, trivial under other circumstances, are vital in this case because they show beyond question the prime purpose of this suit.

But this succession of obvious incidents is not all. The witness Flotman testified that he "had been attending to Mrs. Haesle's affairs since the matter of the property had been going on;" that she asked him to "see what he could do;" that while "Mr. Henry Becker [plaintiff] had not made any assignment to witness of his interest in the property he [plaintiff] just told witness the same, that Mrs. Haesle should be paid." Witness further stated that he had caused the administration to be commenced against the estate of George Becker, Sr., and that he (witness) had authorized the bringing of the suit at bar. This testi-

mony gives a peculiar clarity and significance to plaintiff's statement on the stand that he "had nothing further to do with the litigation."

The trial court properly dismissed the administrator's answer and cross-bill, as there was no authority for his intervention in this suit.

Plaintiff's repeated refusals to assist in the removal of the incumbrance on the property, his renunciation of his interest in same, his express declaration that he had no interest in the litigation, supplemented by the testimony of Flotman, that he, not the plaintiff, commenced this proceeding, as we think is evident, to collect the Haesle claim, together with the entire atmosphere of the case, are ample to authorize a court of equity to determine that the evidence does not warrant the decree prayed for, and that this suit was not brought in good faith to establish the interest of plaintiff as a tenant in common in the property in question. From all of which it follows that the judgment of the trial court should be affirmed, and it is so ordered. All concur.