George S. GILLIAM, Leaner Gilliam Etier, Ethel Gilliam Latham, Audie Gilliam Sanders, Edgar C. Gilliam, Dovey Gilliam Maier, Leet W. Gilliam, Emma Gilliam Gaither, Jewell Gilliam Jackson, Kennie Gilliam Lindsey, W. Dean Cautrell and Hershel L. Gilliam, Appellants,

v.

Gretchen Frommel GOHN and Frank Newberry, Respondents.

No. 45827.

Supreme Court of Missouri, Division No. 2.

June 10, 1957.

Turner M. King and Carloss Wadlington, Ada, Okl., and Roy E. Danuser and Emory D. Curlee, Mountain Home, Ark., for appellants.

Percy Gullic, Alton, Mo., and A. W. Landis, West Plains, Mo., for respondents.

EAGER, Presiding Judge.

■ This is a suit in equity, instituted on June 22, 1954, by appellants as heirs of Althea Gilliam, deceased, against Gretchen Frommel Gohn, another heir, and Frank Newberry, a subsequent purchaser of the real estate involved. The primary purposes of the suit were to cancel a tax deed, to partition the real property among the heirs and Newberry by sale, and to procure an accounting of rents and profits. The real estate consists of a lot in Thayer, Missouri, described as Lot 2, Block 3 of Piland's First Addition; the amended petition alleges that

there was and is thereon "a modern dwelling and other improvements." The suit obviously involves the title to real estate within a jurisdictional sense. We shall refer to the parties as they appeared below. Since the cause was determined by the sustaining of separate motions to dismiss the amended petition and by dismissing the cause, we must look to that petition for the controlling facts, as they will now be related.

Althea Gilliam, a resident of Oregon County, Missouri, owned the house and lot in question and certain personal property; the personal property has become immaterial since the amendment of the petition. Miss Gilliam died in 1938, leaving no husband, children, father or mother. Plaintiffs are nieces and nephews, except that one is a grandnephew; defendant Gretchen Frommel Gohn is a grandniece. Plaintiffs lived in Oklahoma, and defendant Gretchen lived in Thayer, in the home of Miss Gilliam. It is further alleged that upon the death of Miss Gilliam, in or about 1938, defendant Gretchen took possession of the real estate, converted the rents and profits to her own use, and, although under a duty to pay the taxes, failed, neglected and refused so to do for the years 1942–1944, inclusive; that the property was sold for taxes on November 5, 1945, that the father-in-law of defendant, one C. S. Gohn, purchased it for $78.09, and that he received a certificate of purchase, which he later assigned to one Ben Meeks; that on November 21, 1947, a tax deed was issued to Meeks and duly recorded; that Gretchen and one J. P. Frommel "fraudulently conveyed" by quitclaim deed to Meeks "as the sole and only heirs"; that defendant Newberry is the grantee in a warranty deed from Meeks, duly recorded. It was further alleged that the tax sale and deed "were procured by defendant * * * Gohn and * * * C. S. Gohn with the fraudulent intent to deprive plaintiffs of their interest," that defendant Newberry had knowledge of said fraud, that both Meeks and Newberry had sufficient notice to be charged with knowledge; and that the tax deed was void also for insufficiency of consideration.

Somewhat more specifically, plaintiffs alleged: that they were wholly unaware of the "fraudulent acts" of defendant Gretchen and did not discover the facts until 1951; that Gretchen knew some of the plaintiffs, and "could have communicated" to them the fact of Miss Gilliam's death; that plaintiffs had not had "the benefit of higher education," were not financially able to make frequent trips to Thayer, that plaintiffs' "practice of written communication" with Miss Gilliam had decreased as the years passed, and that, although they presumed that Gretchen would communicate "the fact of death or serious illness" to them, she "deliberately concealed" the fact; that Miss Gilliam died intestate. It was also alleged that the tax sale operated in equity solely as a redemption of the property for the benefit of all the heirs, and that Meeks acquired only the undivided interests of defendant Gretchen and J. P. Frommel, and became a tenant in common with plaintiffs. Plaintiffs offered to refund the back taxes with interest. The prayers were, essentially, for an accounting of rents and profits, that the tax deed be cancelled, and that the real estate be sold in partition and the proceeds divided. A copy of the tax deed was attached to plaintiffs' amended petition as an exhibit.

The motions to dismiss were based upon the grounds: (1) that the amended petition did not allege facts upon which the relief prayed, or any relief, could be granted; (2) that it did not allege facts sufficient in law to entitle plaintiffs to any relief; and, (3) that the attempted cause of action for the recovery of the real estate and to set aside the tax deed was barred by Section 140.590 RSMo 1949, V.A.M.S., because more than three years had elapsed between the recording of the tax deed and the filing of the suit. These motions were sustained and the cause dismissed on June 27, 1956, for the stated reason that the plaintiffs failed to state a cause of action "in that plaintiffs (') action is barred by the

statute of limitations applicable thereto." It may be of some materiality to note here that plaintiffs abandoned a paragraph contained in their original petition in which they alleged that defendant Gretchen took charge of and converted the assets, generally, of the estate of Althea Gilliam, and that although she purported to administer on the estate, the proceedings were void.

In an effort to simplify the matter we shall transpose and consolidate some of plaintiffs' points. (All Missouri statutory references will be to RSMo 1949 and V.A.M.S.) These are, essentially: (a) that § 140.590, supra, is inapplicable because the tax sale was, in fact, only a payment of the taxes by or for a cotenant, and that such "payment" comes within the exceptions of the statute; (b) that the sale and tax deed were void for fraud, and that Meeks, with knowledge, merely became a tenant in common; that suit was properly filed within the limitation of the ten year statute, § 516.010; (c) that the tax deed was void on its face because of inadequate consideration, and because it was not attested by the county clerk; and that the limitations of § 140.590 do not apply to a tax deed void on its face; (d) that, as concerns the rents and profits, this being an action for relief on the ground of fraud, the five-year period of limitations of § 516.120, did not begin to run until the discovery in 1951 of the facts constituting the fraud.

On the first point, plaintiffs lean heavily on the contention that defendant Gretchen, being in possession as a cotenant, was under a duty to pay taxes, and that having procured her father-in-law to purchase the property, the purchase at the tax sale amounted merely to a payment of the taxes for the benefit of all the heirs, except those who had quitclaimed. This contention is based upon the wording of § 140.590, which is as follows: "Any suit or proceeding against the tax purchaser, his heirs or assigns, for the recovery of lands sold for taxes, or to defeat or avoid a sale or conveyance of lands for taxes, except in cases where the taxes have been paid or the land

was not subject to taxation, or has been redeemed as provided by law, shall be commenced within three years from the time of recording the tax deed, and not thereafter; provided, that where the person claiming to own such land shall be an infant, or a person of unsound mind, then such suit may be brought at any time within two years after the removal of such disability." This section appears as a special limitation in the chapter on "Collection of Delinquent Taxes." Plaintiffs' contention that there was a "payment" of the taxes, is made in an effort to bring the case within the exceptions of this statute.

In the case of Gearhart v. Gearhart, Mo., 213 S.W. 31, relied on by plaintiffs, a cotenant in possession had permitted and caused the foreclosure of a deed of trust executed by both cotenants; he had also purchased the property at the foreclosure sale, paying the consideration with the proceeds of a new loan on the property. In a suit by the other cotenant to establish a trust, the court held that tenants in common occupy a confidential relation toward each other, and that, as a general rule, if one of them buys up an outstanding title or encumbrance, the purchase will be deemed to have been made for the benefit of all, subject to contribution. Many cases are cited in support of this principle, and it seems to be established in the Missouri law. Going on, however, the court quoted from 7 R.C.L., p. 824, Tit. Cotenancy, § 19, to the effect that a cotenant in sole possession is deemed to have undertaken the discharge of certain duties, including the preservation of the property by making repairs, the payment of interest on encumbrances, and the payment of taxes, and that where such payments are made by one cotenant, they are deemed to be the joint act of all. It was held there that the purchaser at foreclosure was deemed to hold in trust for both cotenants. It would seem that the first principle outlined above would have been sufficient to accomplish that result. The cases of Wicoff v. Moore, Mo., 257 S.W. 474, McCune v. Goodwillie, 204 Mo.

306, 102 S.W. 997, and Kohle v. Hobson, 215 Mo. 213, 114 S.W. 952, cited by counsel, involve generally the duties of life tenants to preserve the property for remaindermen, or the principle already mentioned that the purchase of an outstanding interest by one cotenant inures to the benefit of all cotenants. Certain other Missouri cases cited seem entirely inapplicable.

In the case of Witcher v. Hanley, 299 Mo. 696, 253 S.W. 1002, loc.cit. 1004, the court, after discussing the obligations of a life tenant to preserve the property, pay taxes and interest, and to act generally as a quasi trustee, said: " * * * This is not the situation of cotenants. Unless equities intervene, one cotenant is under no legal obligation to the others to pay taxes and interest. If he does so, the relationship ordinarily entitles him to contribution. If he purchases an outstanding title, the rule which lets in the others upon payment of their proportionate shares does not rest upon any failure of legal duty before the purchase, but upon the quasi trust relation, which, in a sense, is a part of the estate, and which equity implies from the community of interest. This distinction renders inapplicable to this case the rule in Becker v. Becker [254 Mo. 668, 163 S.W. 865] and like cases." We find no more recent Missouri case to the contrary. We thus see that the contention that defendant Gretchen was under a duty to pay the taxes rests upon somewhat insecure ground under the Missouri authorities. Nor are we certain that such is a material issue here. We do not think that the recent case of Hunott v. Critchlow, Mo., 285 S.W.2d 594, either defined the duties of a cotenant or decided whether such a tax sale could or did constitute a mere payment of the taxes. The effect of the holding in the case of Wm. H. Johnson Timber & Realty Co. v. Belt, 329 Mo. 515, 46 S.W.2d 153, is simply that the three-year limitation does not apply if the taxes have actually been paid and a tax sale is made by mistake; even there, however, the claimant was held bound by a prior quiet title decree in which his conten-

tions could have been adjudicated. Counsel cite many cases from other states, some of which apparently regard the acquisition of a tax title by one cotenant as a mere payment of the taxes, or a redemption, for the benefit of all. We feel, however, that we may better confine ourselves to the guideposts of our own cases and statutes, and to the facts of this particular case. We shall not attempt to discuss these many authorities.

■ From the foregoing it would not seem that the purchase at the tax sale constituted merely a payment of the taxes solely because defendant Gretchen was under any duty to pay the taxes. There are additional reasons why, in our opinion, plaintiffs may not claim the benefit of the exception in the statute, namely, "when the taxes have been paid * * *." Plaintiffs' sole theory of "payment" is that the defendant, acting fraudulently through another, purchased the property for herself. The only allegations tending even remotely to sustain that theory are, in substance, that Gretchen failed to pay the taxes, that her father-in-law purchased at the tax sale (later assigning to Mecks whose connection is in nowise shown), that she "procured the purchase," and that the tax deed was "procured by fraud against plaintiffs." We consider these allegations as insufficient to show that defendant Gretchen was the actual purchaser, even in equity, which would seem essential if the purchase is to be held to constitute a mere payment or redemption by one cotenant on behalf of all. Nowhere are facts alleged to show that this defendant received any money or other benefits, or that she has any remaining interest in the property; on the contrary, her quitclaim deed indicates that she has none. In other words, the facts alleged here do not bring the case within the principle of the most favorable cases holding that a purchase by a cotenant at a tax sale is a mere payment of the taxes.

■ But even from a consideration of the statute itself, § 140.590, supra, we hold

that the payment therein referred to as an exception to the bar of the statute ("except in cases where the taxes have been paid"), is a payment of the taxes in question, prior to the sale, to the governmental body involved; the legislative purpose was evidently to relieve against the three-year limitation if a mistake had been made by the taxing authorities. We do not think that this exception in the statute was ever meant to include a "payment" of the nature presented here, which in fact, concerns merely a controversy between private parties as to the result of the tax sale, and not as to the validity of the sale itself. In a somewhat similar limitation contained in the Louisiana Constitution (LSA–Const. 1921, Art. X, § 11, cited by plaintiffs) the "payment" is limited by the words "prior to the date of sale." The cited Wisconsin statute (Wis.Sts.1955, §§ 75.27, 75.28) in similar vein states that the limitation shall not apply where the taxes were paid "prior to the sale. * * *" These enactments, we think, indicate the general legislative intent; nor do we believe that the omission of the words "prior to the sale" from the Missouri statute, indicates a purpose to broaden the meaning of the term "paid." We thus deny the contention that § 140.590 is inapplicable because the taxes were paid. The bar of limitations in such cases may be raised by motion to dismiss. Granger v. Barber, Mo., 235 S.W.2d 293.

The next contention is that the petition sufficiently alleged that the tax sale and tax deed were void for fraud, and that Meeks, with notice, became a tenant in common with the plaintiffs. Aside from general allegations that defendant Gretchen "procured" the tax purchase, and loose assertions of fraud, generally, plaintiffs allege that over a period of years they did not (for reasons of rather doubtful validity) visit their aunt; the reasons given were domestic responsibilities and financial inability to make frequent trips; they also alleged that defendant Gretchen failed to communicate with them or to notify them of the death, and that she "could have communicated" that information, although they, on their part, were admittedly remiss in their correspondence; it is not alleged that any of the plaintiffs ever inquired of Gretchen about the existing status; yet they "presumed" that she would communicate with them. These facts are presented as constituting a deliberate and fraudulent concealment on the part of Gretchen, and as justifying plaintiffs' failure to discover the facts until 1951, when one of them drove to Thayer, approximately 13 years after the death. We hold that these allegations do not constitute a sufficient factual averment of fraud or concealment. The fraudulent concealment which avoids the running of a statute of limitations must be something more than mere silence on defendant's part, and the plaintiff is deemed cognizant of facts which he could have discovered by exercising ordinary care; usually the employment of some means or device to prevent discovery should be shown. Since such facts must be proven, it is also necessary to plead them. Brown v. Irving-Pitt Mfg. Co., 316 Mo. 1023, 292 S.W. 1023; Womack v. Callaway County, Mo., 159 S.W.2d 630; Siler v. Kessinger, Mo.App., 149 S.W.2d 890. The courts have thus, in effect, engrafted upon subsection (5) of § 516.120 a requirement that the claimant, in failing to discover "the facts constituting the fraud," must have acted in the exercise of due diligence. General allegations of fraud or of a fraudulent procurement, without further facts or circumstances, are insufficient. Section 509.-160; Venegoni v. Giudicy, Mo.App., 238 S.W.2d 17; Weitzman v. Weitzman, Mo., 156 S.W.2d 906.

Since the amended petition thus stated no valid cause of action based on fraud, it is unnecessary to consider the further contention that the fraud pleaded extended the period of the three-year statute of limitations. We may note here, however, that the section in question contains no exception for fraud (as does § 516.120) and that it is a special statute of limitations. See, generally: State ex rel. Bier v. Bigger,

Banc, 352 Mo. 502, 178 S.W.2d 347. In the latter case the court said, 178 S.W.2d loc. cit. 350: "This court has uniformly held that where a statute of limitations is a special one, not included in the general chapter of limitations, the running thereof cannot be tolled because of fraud, concealment or any other reason not provided in the statute itself. * * *" It is also entirely apparent that if the allegations of fraud were ineffective as to defendant Gretchen, they are at least equally as ineffective against the subsequent purchasers, Mecks and the defendant Newberry.

Counsel argue, somewhat indirectly, that the person or persons acquiring the tax title became constructive trustees for the plaintiffs. What has been said really answers that contention. Since no legally sufficient fraud has been alleged, none of the holders of the tax title could be held to be a trustee ex maleficio, though fraud is often held to be the basis of a constructive trust. Beach v. Beach, Mo., 207 S.W.2d 481; Parker v. Blakeley, 338 Mo. 1189, 93 S.W.2d 981. And, laying aside the question of fraud, there are no sufficient facts alleged to show that the defendant Gretchen became in fact the purchaser at, or the beneficiary of, the tax sale so as to put in motion the theory of responsibility as between cotenants, discussed at some length above. It may well be, also, that the recording of the tax deed on November 21, 1947, together with the subsequent recorded quitclaim from defendant Gretchen and another to Meeks, constituted such a repudiation as to start the running of limitations, even as against a constructive trust. See: Swon v. Huddleston, Mo., 282 S.W. 2d 18, and cases there cited. But under these circumstances we need not decide that question.

The remaining question, in so far as the real estate is concerned, involves the contention that the tax deed was void on its face, and that § 140.590, supra, is not applicable in such event. It is claimed that the deed was void because: (a) the deed was not attested by the county clerk,

as required by § 140.460; and, (b) the tax sale was made for a "grossly inadequate consideration." We may eliminate the first of these claims, for it was not pleaded. Plaintiffs alleged two specific reasons why the tax deed was supposedly void, (a) for fraud (which has already been discussed), and (b), for insufficiency of consideration. The parties may not adopt here a different theory from that urged in the trial court, Simmons v. Friday, 359 Mo. 812, 224 S.W. 2d 90; Smithpeter v. Wabash R. Co., 360 Mo. 835, 231 S.W.2d 135, 19 A.L.R.2d 950, or present issues not made by the pleadings. We proceed to a discussion of the claim of inadequate consideration.

There are various Missouri cases holding tax deeds void where the consideration was so grossly inadequate as to shock the conscience. Bussen Realty Co. v. Benson, 349 Mo. 58, 159 S.W.2d 813; Costello v. City of St. Louis, Mo., 262 S.W. 2d 591; Johnson v. McAboy, 350 Mo. 1086, 169 S.W.2d 932; J. C. Nichols Inv. Co. v. Roorbach, Mo., 162 S.W.2d 274; Liese v. Sackbauer, Mo., 222 S.W.2d 84; Kennen v. McFarling, 350 Mo. 180, 165 S.W.2d 681; Daniel v. Mollett, 354 Mo. 50, 188 S. W.2d 54. The theory of these cases seems to be that the purchase under such circumstances is at least a constructive fraud. The theory was originally applied to judicial sales, and apparently was first applied to sales under the so-called Jones-Munger Act (Laws 1933, pp. 425–449, now contained in Chapter 140, RSMo 1949, V.A.M.S.) in the Bussen Realty case, supra. In so far as the principle is applied to such statutory sales, there is much to be said for the reasoning in the dissenting opinion of Leedy, J., in the Bussen case, 159 S.W.2d 819, but the principle announced has become so firmly fixed in our law that we shall not discuss it, but rather distinguish the precise situation in the present case. It appears that evidence was heard in all of the cases cited above, which evidence, we may presume, established the inadequacy of the consideration. In most of those cases no question of limitations was involved. In

the Costello case, supra, the court held that a purchase of improved city property at a price of something less than 16 cents a front foot was so grossly inadequate as to constitute a fraud and render the tax deed void upon its face; that, moreover, where such a deed is *void on its face*, the statute of limitations is not put in motion. The theory is, we assume, that the instrument never actually became operative as a deed at all. We may accept that proposition and proceed to examine the present situation. In so doing we consider only the tax deed, copy of which was attached to the petition as an exhibit. This deed recites the purchase at public auction of Lot 2, Block 3, Piland's First Addition in the City of Thayer, for $109.96, by reason of delinquent taxes for the years 1942–1944, inclusive; nothing is said therein concerning improvements or the value of the lot. Since the present argument is directed solely at the face of the deed, we may not look to the petition to supplement it. We certainly may not say from the face of this deed that a purchase for the price recited constituted a fraud, actual or constructive.

In the case of Granger v. Barber, Mo., 236 S.W.2d 293, a suit to set aside a tax deed, a motion to dismiss had been sustained. The petition alleged various infirmities in the tax sale, and that the sale price was "so grossly inadequate that it amounted to fraud." The deed itself was not before the court, and the court stated that the allegations of the petition concerning the infirmities were not allegations of matters shown upon the face of the deed. As to the inadequacy of consideration the court said, 236 S.W.2d loc.cit. 296: " * * * Obviously, the gross inadequacy of consideration would not be apparent from the face of the deed alone and the decisions of this Court holding that a tax deed will be set aside where the evidence shows a gross inadequacy of consideration are of no assistance to appellants. * * * " In that case it was further noted that the bar of the statute of limitations might properly be raised by motion to dismiss. In Bussen Realty Co. v. Benson, 349 Mo. 58, 159 S.

W.2d 813, the court, after discussing the inadequacy of consideration as a fraud, particularly referred to the two-year period of exemption as affording a measure of relief from the "harshness" of the summary sale procedure, and to the three-year statute of limitations (now our § 140.590) as applicable after the period of redemption had expired. This would appear to be a recognition of the general applicability of the three-year statute, even in cases of supposed fraud for inadequacy of consideration. We hold that here there was no such invalidity of the tax deed on its face as would prevent the operation of the limitation provided in § 140.590.

We thus hold, as indicated, that the present suit is barred by limitations, so far as the real estate is concerned; the tax deed was recorded on November 21, 1947, and the suit was not instituted until June 22, 1954. It remains only to consider the allegations that defendant Gretchen Frommel Gohn converted the rents and profits to her own use, and the prayer for an accounting. No facts were alleged which showed, even remotely, the rental value of the property, or that such value exceeded the cost of its normal upkeep and preservation. Since we have held that the tax deed constituted a valid conveyance (so far as the issues here are concerned), the claim for rents could certainly not be valid as to any rents accruing after the date of that deed. Plaintiffs insist that their recovery for rents is limited only by § 516.120(5) which permits suit within five years after the discovery of "facts constituting the fraud." In our previous discussions we have held that plaintiffs have alleged no facts constituting actionable fraud; that situation comprehends the status of both the real estate and the rents. Certainly, in this view, the five-year statute, unextended by any sufficient allegation of facts constituting fraud, bars the recovery of any rents accruing prior to November 21, 1947.

We conclude that the order and judgment dismissing the cause should be affirmed, and it is so ordered.

All concur.