HENRY P. P. BROWN et al., Appellants, v.
WILLIAM A. HOWARD et al.

Division Two, March 30, 1915.

1. **TENANCY IN COMMON: Purchase of Outstanding Title:
   Election.** A tenant in common who has elected to repudiate any
   share in an outstanding title acquired by a cotenant is bound by
   that election and cannot afterward assert rights inconsistent
   therewith.

2. ————: ————: ————: **Assertion of Inconsistent Rights.**
   Even though it be conceded that when the husband of a tenant
   in common buys an outstanding title he holds the title in trust
   for the cotenants, yet where an heir, in a prior suit concerning
   lands included in his decedent's estate, has claimed adversely
   to the outstanding title which the husband of another heir had
   bought in, he will not be heard in a subsequent suit to assert
   an interest in the title held by the husband.

3. **TRUSTS: Repudiation: Subsequent Attempt to Enforce.** After
   having repudiated a trust agreement concerning land by claim-
   ing outside of and adverse to its terms in one action, a party
   cannot in a subsequent action assert an interest thereunder.

Appeal from Buchanan Circuit Court.—*Hon. W. K.
Amick,* Judge.

AFFIRMED.

*C. W. Meyer* for appellants.

(1)   The trust agreement pleaded and proved by
plaintiffs is valid and binding: (a)   Because of the
decisions in Howard v. Brown, 197 Mo. 36 and 52.
(b)   Because nothing has been shown that cancels,
destroys or abrogates it.   (c)   It is not pretended that
it has been carried out.   (d)   There is no provision
in it requiring any of the parties to quitclaim their
interest to anyone except on agreement and written
request, and no such written request or agreement was
shown.   (2)   Respondents are estopped from setting

up any repudiation or abrogation of this agreement because: (a) They pleaded and relied on said agreement in Howard v. Brown. (b) They cannot be permitted now to take a position inconsistent with that which they took in the case just mentioned. Green v. St. Louis, 106 Mo. 454; Coney v. Laird, 153 Mo. 408; Kennedy v. Bambrick, 20 Mo. App. 257. (c) It is not claimed by respondents that any acts or words of repudiation were done or said since 1903, the time when the cases of Howard v. Brown, were instituted. (d) There is no evidence of attempted or alleged repudiation since 1903, the year when William A. Howard specifically pleaded it. (e) Respondents themselves acknowledged a copy of it, June 20, 1900, and soon afterward filed it for record. (3) Respondent William A. Howard, by the purchase of the property mentioned in said trust agreement at trustee's sale, became trustee of a resulting trust, and a resulting trust was thereby created in favor of the parties and beneficiaries of said trust agreement in conformity with its terms and provisions. (4) The trust agreement having been held valid as to the avenue property in Howard v. Brown, supra, the same reasons, facts and principles must make it valid as to the Market Square property.

*William E. Stringfellow* for respondents.

(1) The question whether the trust agreement was alive or dead at the time the property was purchased by William A. Howard not having been in controversy in the former suits, was not adjudicated in the former suits and was a proper subject of inquiry in the case at bar. Baker v. Lane, 137 Mo. 682; Gwin v. Waggoner, 116 Mo. 143; Garrett v. Greenwell, 92 Mo. 120; Spradling v. Conway, 51 Mo. 51; Dickey v. Heim, 48 Mo. App. 114; Winhim v. Kline, 77 Mo. App. 36; 23 Cyc. 1311. (2) There is no evidence in this case to justify the declaration of a resulting trust. Evidence

to establish a resulting trust must be so clear, strong and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust. Reed v. Sperry, 193 Mo. 167; Burdett v. May, 100 Mo. 13.

ROY, C.—This is a suit begun September 15, 1909, to compel an accounting by the defendant William A. Howard as trustee of real estate. The finding and judgment were for defendants and the plaintiffs have appealed.

George W. Brown died in 1875 the owner of the east 20 feet of lot 1 and the east 20 feet of the south 16 feet of lot 2 in block 30 in the city of St. Joseph, on which there was an old two-story business house. It is hereafter called the Market Square property. He also owned lots 4, 5, 6 and 7 in block 1 in Landis & Hull's addition to said city. The Market Square property was encumbered for $3000 at 10 per cent. He left a will which was admitted to probate and read in evidence, but it in no way affects the issues herein. For convenience we shall consider the case as though he died intestate. After the death of George W. Brown the incumbrance on the Market Square property was foreclosed by suit against the heirs of Brown and the property sold under that proceeding to Parmelia J. Brown, a daughter of the deceased, on March 11, 1875.

On September 10, 1888, Silas Woodson acquired the title to said lots 4, 5, 6 and 7 at a sale under a proceeding against the widow and heirs of George W. Brown, foreclosing the lien of a special tax bill for street improvements, and on September 25 following Woodson conveyed the lots to Parmelia J. Brown, who executed a deed of trust to Hoagland on the Market Square property to secure $3000 at 9 per cent, and another to the same party on lots 5, 6 and 7 to secure $1160 at 8 per cent. She died in 1896, intestate and without issue. Her heirs were her mother, Mary A.

Brown, her brother, the plaintiff Henry P. P. Brown, her sisters, Evelyn Knapp and Ellen Howard, wife of her codefendant herein, and her nephew Paul Floyd, only heir of a deceased sister of Parmelia J. Brown.

Demands amounting to $1010.49 were allowed against the estate of Parmelia J. Brown, of which $912.65 was held by the defendant William A. Howard. There were no personal assets in the estate. The probate court made an order to sell all the real estate to pay debts. Under that order all the property except said lot 4 was sold and conveyed to C. A. Shoup, who paid $110 for the Market Spuare property, and the same amounts for lots 5, 6 and 7, all subject to the incumbrances. Following that sale, most of the heirs consulted together for the purpose of setting aside the sale to Shoup and saving the property as far as possible to the heirs. In those negotiations Henry P. P. Brown claimed that there were defects in the publication of notice against him in the various proceedings under which his sister claimed title to the property, and that, by reason of those defects, she had never acquired the interest inherited by him from his father. As a result of those negotiations all those heirs except Mary A. Brown and Paul Floyd became parties to the agreement of December 19, 1899, which is set out *in haec verba* in Howard v. Brown, 197 Mo. 1. c. 42 et seq. That agreement provided that John G. Howard (a brother of William A.) should take title to the property from Shoup and hold it in that trust for said heirs and sell it on their written request; that the proceeds should be applied, first, to the payment of the incumbrances, then to the payment of William A. Howard's demands against Parmelia's estate, the expense of tax deed to Mrs. Grace Brown (the wife of Henry P. P.), and the expense of getting deed from Shoup, including the expense of contesting the sale, and attorney's fees.

It was thereby provided that the surplus after such payments was to be divided among the heirs, Henry receiving one-eleventh of said surplus in excess of what the others were to get. While it was not so stated in the agreement, said extra allowance was made to Henry by reason of the fact that he claimed as above stated that his sister had never acquired his interest in the property.

Soon after the making of that contract, John G. Howard acquired the title of Shoup, which did not include lot 4. The deed from Shoup to John G. Howard did not designate him as trustee, but purported to be a simple conveyance of the legal title to him.

As near as can be ascertained from the evidence, defendant William A. Howard paid $335 and Henry P. P. Brown paid $75 to procure the deed from Shoup to John G. Howard.

On April 21, 1900, Henry P. P. Brown and wife, Evelyn Knapp and Mary A. Brown brought suit against John Howard and Ellen Howard charging that, in violation of said agreement, John G. Howard had taken the title in his own name and not as trustee, and seeking to have the title vested in the plaintiffs in that suit. That suit was dismissed by the plaintiffs therein on June 16, 1900. John G. Howard testified in this suit that after that suit was brought he talked with Henry Brown about it, and that Henry said, "Well, Mr. Howard, I find no fault with anything you have done, but I have been consulting a lawyer, and I have made up my mind that my little one-eleventh share in that estate is worth more than I will get out of it any other way, and I am not going to do what I agreed to do with you and I am going to have you deed the place back to the Brown heirs." Both John G. Howard and William A. Howard testified that they made an effort to secure an extension of the loans on the land at a cheaper rate of interest and were not able to do so because

Hoagland had heard that Henry Brown was making claim to an outstanding interest in the land, and would not extend the loan unless Henry would release such outstanding interest, which Henry refused to do.

On June 17, 1901, in some litigation between the parties, the nature and result of which are not herein disclosed, the deposition of Henry P. P. Brown was taken and read in evidence in this case, in which the following occurred:

"Q. Did Mr. John G. Howard ever ask you to sign a quitclaim deed pursuant to the agreement of this contract for the purpose of trying to procure a loan? A. No, I never had any contract. He asked me to give them one.

"Q. Did he ever ask you to give him a quitclaim in order to fix up this title to try and borrow money at a lower rate of interest than they were paying Mr. Hoagland? A. Yes, he asked me to give him a quitclaim.

"Q. What was you answer? A. That if I wanted to borrow any money on it, I could mortgage my own interest.

"Q. Did Mr. Howard at that time tell you that unless they fixed up the title, Mr. Hoagland would sell it out? A. No, he did not. He told me they would show Mr. Hoagland.

"Q. Which was talking? A. William A. and John G. Howard.

"Q. What did you tell then? A. I told them there was nothing against my property and that I could mortgage my own property if I wanted to. I did not want to give it away."

On May 24, 1900, Hoagland foreclosed his deeds of trust by having sales made by the trustee, and William A. Howard became the purchaser of the Market Square property for $3215, and of said lots 5, 6 and 7 for $1530, and received the trustee's deeds therefor. On May 20, 1902, William A. Howard acquired title

to said lot 4 at a sale by the administrator of Parmelia J. Brown's estate for $200.

The defendant in the deposition above mentioned testified in effect that the Market Square property was sold to Shoup for its full value.

The evidence of several real·estate men who testified for defendants tended to show that defendant William A. Howard paid full value for lots 5, 6 and 7.

Defendant Henry P. P. Brown in his deposition claimed that lots 5, 6 and 7 were worth much more than was paid for them by William A. Howard, but he said that they were appraised for sale by the administrator at $20 a foot. It appears from the evidence that the lots had a frontage of 25 feet each.

A short time after his purchase of the outstanding titles to the property, William A. Howard began two suits against Henry P. P. Brown, one to quiet title to said lot 4, decided by this court June 19, 1906, reported in 197 Mo. 36; and the other to quiet title to said lots 5, 6 and 7, which is reported in 197 Mo. 52. Those cases as thus reported were read in evidence in this case by the plaintiffs, and reference is here made to them for the facts contained in them and for the result therein reached.

The answer in this suit states that prior to the purchase of the land by William A. Howard, Henry P. P. Brown had repudiated said trust agreement and claimed an outstanding interest in the land. It also alleges the expenditure of large sums by defendant for repairs and insurance on the property.

The evidence for defendant shows that William A. Howard paid about $900 for repairs on the Market Square property. The evidence for the plaintiff was that such repairs did not exceed about $400.

The reply herein contains the following:

"For further reply plaintiffs state that William A. Howard, defendant herein, did on the 25th day of June, 1903, file a reply in each of two causes of action

instituted by him in the circuit court of Buchanan
county, Missouri, against Henry P. P. Brown and
Grace Brown, plaintiffs herein, entitled and numbered
12312 and 12313 respectively; that said defendant,
William A. Howard, set up in said replies the trust
agreement pleaded in plaintiff's petition and made said
trust agreement a part of said replies; that defendant,
William A. Howard, in the suits aforesaid, treated said
trust agreement as a valid subsisting contract; that evi-
dence was introduced by said defendant, William A.
Howard, in said suits regarding the execution, force
and effect of said contract and the circumstances under
which it was made; that defendant, William A. Howard,
asserted his rights thereunder and accepted the benefits
of said contract; that all this occurred long subsequent
to the time defendants allege plaintiffs repudiated said
trust agreement and that defendants are estopped to
deny or repudiate said trust agreement or to maintain
that plaintiffs repudiated said contract.''

There are many questions raised by the briefs of
counsel in this case, but it is only necessary to decide
one point.  We will concede, with-
out deciding, that the husband of a
cotenant who buys an outstanding
title holds that title for the benefit
of those cotenants who elect within
a reasonable time to pay their part of the cost of acquir-
ing such title.  After the acquisition of the outstanding
title by William A. Howard the parties to the trust
agreement were driven to their election within a rea-
sonable time either to adopt the purchase made by him
and contribute their portion of the expense of such
purchase, or to repudiate such purchase.  [Freeman
on Cot. and Par., sec. 154; 38 Cyc. 40; 17 Am. &
Eng. Ency. Law, p. 679; Nalle v. Parks, 173 Mo. l. c.
626.]

The reports of the cases in 197 Mo., pages 36 and
52, to which reference is above made, were made a part

Repudiation of Trust.

of this case by the pleadings and evidence. From them it appears that in those cases Henry P. P. Brown claimed title outside of and adverse to the trust agreement and adverse to the title purchased by William A. Howard. Such conduct certainly amounted to an election not to claim any interest in the title purchased by William A. Howard. That election once made is final. The Cyclopedia of Law and Procedure, vol. 15, p. 262, says:

"An election once made, with knowledge of the facts, between coexisting remedial rights which are inconsistent is irrevocable and conclusive, irrespective of intent, and constitutes an absolute bar to any action, suit or proceeding based upon a remedial right inconsistent with that asserted by the election, or to the maintenance of a defense founded on such inconsistent right."

Appellants contend that in the former cases between the same parties above alluded to the validity of the trust agreement was adjudicated and established. Those opinions of this court on that point are free from uncertainty. They establish the fact that such agreement was executed, but they expressly refrain from deciding what if any rights or obligations existed between the parties under that contract at the time of the trial of those cases. We are now deciding that point for the first time, and we hold that by his contention made in the former cases Henry P. P. Brown made a final and irrevocable election which precludes him from any right to participate in the title purchased by William A. Howard.

The judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.