BEN WILLOUGHBY, JOSEPH H. WILLOUGHBY, MRS. LAURA BUDDE and MRS. LUCY BRIQUELEUR, Appellants, v. WILLIAM BRANDES, DOROTHY BRANDES, MARY ANN WILLOUGHBY and ANNA BRANDES.— 297 S. W. 54.

Division One, June 25, 1927.

1. **TRIAL: Evidence after Submission: Equity.** The setting aside of a submission in a suit in equity in order that the parties, or either of them, may offer evidence inadvertently omitted, is a matter resting broadly within the sound discretion of the court; and although the submission was set aside on the application of defendants without notice to plaintiffs' counsel and in their absence, and some further evidence was received, if a transcript of the testimony was furnished plaintiffs' counsel and they were later afforded an opportunity to cross-examine the witness and to offer countervailing evidence, which offer they declined, it will not be ruled that there was an abuse of the court's discretion, in the absence of a showing that prejudice resulted to plaintiffs.

2. **EVIDENCE: To Vary Deed: Grantor's Intention: Allegation of Fraud in Reply Only.** In the absence of fraud, accident or mistake, oral evidence is not admissible to vary, impeach or contradict a written instrument; and averments of fraud in the reply, if there are none in the petition, do not furnish a basis for the reception of evidence to impeach a warranty deed. And where the petition to cancel and set aside the deed contains no allegation of fraud or mistake, it is not error to exclude testimony of the grantor to the effect that, notwithstanding she executed a deed purporting to convey to the grantee the fee in the land in it described, she intended to convey a mere life estate and he at the time knew that such was her intention.

3. **CONVEYANCE: Deed of Trust: Foreclosure: Widow as Purchaser: Equities of Heirs.** The foreclosure of a deed of trust placed upon land by the deceased owner and his wife, and a trustee's deed to the holder of the mortgage notes, and a deed by him to the mortgagor's widow for the amount of the mortgage notes and the expenses of the foreclosure sale, should be regarded as a single conveyance, and conveys the legal title to the widow; but whether the mortgagor's heirs retain enforceable equities as against

the widow depends upon her relation to them and her prior relation to the title.

**4. HOMESTEAD: Unassigned Dower: Relation of Widow to Heirs: Foreclosure of Deed of Trust.** Under the homestead law in force when the owner of land died in 1875, the fee, as to the homestead, upon his death, passed to and vested in his widow, his minor children being entitled to the enjoyment of such homestead with her until they reached their majority; and the widow was also entitled to dower in so much of the land as exceeded the extent of the homestead, but unassigned dower is not an estate in land, but nothing more than a chose in action; and if dower was not assigned at the time of a foreclosure sale of the entire farm under a deed of trust placed upon it by her deceased husband, she was the owner of the fee in so much of the land as constituted a statutory homestead, and not a life tenant, and she and her husband's heirs were co-owners of the land, and she was a cotenant.

**5. DEED OF TRUST: Homestead: Foreclose: Purchase by Widow: Collusion: Notice to Later Purchaser of Rights of Heirs.** There being nothing in the evidence to suggest that the widow in collusion with the trustee in the deed of trust placed upon the farm by her deceased husband brought about a foreclosure sale for the purpose of enabling her to acquire full title to the land to the exclusion of her husband's heirs, and she being the owner in fee in so much of the land as constituted a homestead, the effect of the foreclosure sale as touching the interests of such heirs must be determined from equitable principles applicable to the purchase by one co-tenant of an outstanding title or lien affecting the common property; and in such case, the rule is that the purchasing widow, being a cotenant, is to be regarded as holding for the benefit of all cotenants, including such heirs, who make seasonable contribution of their share of her expenditure in acquiring the outstanding title; and if the trustee's deed at the foreclosure sale conveyed the legal title to her, and she later conveyed the entire tract to another, such grantee took the title with notice of the trust relation existing between the widow and her husband's heirs, and of their right to participate in the benefits of her purchase by contributing within a reasonable time their share of the purchase money.

**6. ———: Foreclosure Sale: Purchase by Cotenant: Valid Deeds: Untimely Contribution by Other Cotenants.** The purchase by a cotenant at a foreclosure sale of a deed of trust is not void, nor does the interest so acquired vest by operation of law in his cotenants; nor is the later conveyance by such purchasing cotenant to another void, but such grantee continues to be a cotenant with the original cotenants, and such cotenants have the right to share in the benefit of the purchase of the outstanding title by contributing, within a reasonable time, their share of the money expended in acquiring the outstanding title. But they have no other right, and they must contribute, or offer to contribute, within a reasonable time, and if they delay for thirty years their right is extinguished. So that where the owner of land died in 1875, and his widow under the then law had a fee in so much of the land as constituted a homestead and was therefore a cotenant with his heirs, and at a foreclosure sale of a deed of trust placed upon the entire farm by him in his lifetime she became the purchaser and then conveyed by warranty deed to defendant, who paid the mortgage debt as a part of the consideration for the conveyance, neither the trustee's deed to the widow, nor her deed to defendant, was void, and the husband's heirs cannot recover on the theory that they were nullities, but their only right was to share in the benefits of the purchase by contributing their proportionate share of the purchase money and the expenses of the foreclosure sale; and although such heirs were minors at the time of such foreclosure, if the youngest of them reached a majority age more than thirty years ago,

and none of them has contributed or offered to contribute any proportion of such purchase money and expense, they are all barred by lapse of time from sharing in the benefits of such purchase, and have no title or legal interest in the lands.

---

Corpus Juris-Cyc. References: **Dower**, 19 C. J., Section 202, p. 531, n. 25. **Evidence**, 22 C. J., Section 1487, p. 1122, n. 1.   **Homesteads**, 29 C. J., Section 470, p. 995, n. 24; Section 508, p. 1017, n. 66; Section 522, p. 1027, n. 1. **Pleading**, 31 Cyc., p. 685, n. 5.   **Tenancy in Common**, 38 Cyc., p. 46, n. 82. **Trial**, 38 Cyc., p. 1939, n. 4.

Appeal from Circuit Court of St. Louis County.—*Hon. G. A. Wurdeman*, Judge.

AFFIRMED.                                                          •

*Raleigh McCormick, W. W. Cohick, Robert A. Powell* and *Lee A. Hall* for appellants.

(1)   The will having been duly probated in the county where the real estate in question was situated, anyone dealing with the title to the property which stood on the record in the name of Willoughby had constructive notice of the fact that the widow was only a life tenant with the remainder over to the children.   Brandes took the title which the widow had and no more, and since she could not defeat the remaindermen neither could he, and he took the title as a trustee for the remaindermen on the termination of the life estate. De Weese v. Reinhard, 165 U. S. 386, 392; Case v. Goodman, 250 Mo. 112; Price v. Morrison, 236 S. W. 297; Allen v. Ligon, 175 Ky. 767; Russell v. Ransom, 76 Ill. 167; Falvey v. Hicks, 286 S. W. 385. (2)   The life tenant is under the duty of protecting the remaindermen in the title, especially where, as here, that life tenant was the mother of the remaindermen, who were minor children, and cannot acquire a title adverse to those remaindermen.   McMichaels v. Reese, 190 S. W. 51.   (3)   Brandes, with both actual and constructive notice of the title of the widow and the rights of the remaindermen, her children, could acquire no better title than his grantor had. Conn. Mut. Life Ins. Co. v. Smith, 117 Mo. 281; Stuart v. Ramsey, 196 Mo. 404; Case v. Goodman, supra.   (4)   The property which Brandes claims to have bought from the widow by warranty deed to the fee for $1460 was at the time worth fully ten times that purchase price and was only subject to $3,000 against the fee, and $2400 against the life estate in addition.   The widow was then thirty-seven years old and her life estate was worth many times what was against the property, and Brandes paid a grossly inadequate price. This inadequate price is so glaring in this case as to be evidence of fraud, and is so far below the fair value of the life estate as to put Brandes upon

inquiry and to bind him with notice of all he would have found upon inquiry. Clelland v. Clelland, 235 S. W. 816; Hoppin v. Doty, 25 Wis. 573, 591; De Witt v. Perkins 22 Wis. 473; Lionberger v. Baker, 88 Mo. 447. (5) No cause of action accrued to the plaintiffs which they were bound to assert: (a) As to the part of the property which was properly assignable as a homestead until the life tenant died. (b) In any case or view, as to the surplus over the statutory homestead within the period of limitations (Falvey v. Hicks, supra); and (c) Respondents claimed title through a trustee *ex maleficio,* with notice, and are trustees *ex maleficio* in law and in fact and cannot plead the statute of limitations when called to account by their *cestui que trust.* Case v. Goodman, supra; Willys v. Robinson, 237 S. W. 1035.

*Watts & Gentry* for respondents.

(1) It clearly appeared that whatever was given to the widow by the will, so far as it affected the real estate, was completely lost by the foreclosure sale under the deed of trust, in which both she and her husband had signed away all their title to the trustee, and that said sale had been made to Jones, who thereby acquired the fee-simple title, and that thereafter he deeded the fee-simple title to Mrs. Willoughby. From the time of the foreclosure sale there was no life estate, for the widow had completely lost it. What she had when she sold to Brandes was the fee-simple title and that is what he got. Becker v. Becker, 254 Mo. 668; Wenzel v. O'Neal, 222 S. W. 392; Stephens v. Ells, 65 Mo. 456; Aubuchon v. Aubuchon, 133 Mo. 260; Starkweather v. Jenner, 216 U. S. 524. (2) There was no duty on the part of Mrs. Willoughby, as life tenant, after her purchase from Jones, to protect the children of James Willoughby in their interests as remaindermen under his will, because the real estate did not pass by that will, but the devise in the will was defeated by the sale of the property under the deed of trust which Willoughby and his wife had executed in January, 1875. Hence, the children were not remaindermen, there was no life tenancy left, for it had been destroyed by that foreclosure sale, and when Mrs. Willoughby acquired the property from Jones, who had purchased it at the foreclosure sale, she got the fee-simple title and no longer had any life estate. Cases supra. (3) There was no evidence of any fraud on the part of either Mrs. Willoughby or Brandes. Fraud must be proved, it cannot be merely inferred in the absence of clear proof. If the facts shown are as consistent with fair dealing and honesty of purpose as with fraud, then fraud will not be inferred. Ulrich v. Pierce, 233 S. W. 401; Garesche v. MacDonald, 103 Mo. 1. (4) If a cause of action ever accrued in favor of the plaintiffs entitling them to a decree

canceling the deed of March 6, 1880, from Mary Ann Willoughby
to defendant, William Brandes, that cause of action accrued as soon
as the youngest one of the plaintiffs became of age, which was in
1892. This is not an action for possession of the property, but an
action in equity to remove an alleged cloud from a title by canceling
the said deed. In no event was it necessary for plaintiffs to wait
until the death of Mrs. Willoughby—in fact they did not wait until
her death to bring such an action. This cause of action accrued in
1892, and was barred in ten years thereafter. Such an action falls
within the ten-year statute. Secs. 1315, 1316, R. S. 1919; Newton v.
Rebenack, 90 Mo. App. 659; Hunter v. Hunter, 50 Mo. 445. The
statute begins to run as soon as the right of action accrues. Keeton's
Heirs v. Keeton's Admr., 20 Mo. 530; Newton v. Rebenack, 90 Mo.
App. 659; Hudson v. Cahoon, 193 Mo. 547; Boyd v. Buchanan, 176
Mo. App. 56. (5) The defense of laches ought to be upheld.
Rutter v. Carothers, 223 Mo. 640; Betzler and Clark v. James, 227
Mo. 392; Bobb v. Wolff, 148 Mo. 348; Price v. Boyle, 229 S. W. 206;
Stevenson v. Saline Co., 65 Mo. 429; Bliss v. Prichard, 67 Mo. 181.

RAGLAND, J.—This is a suit in equity to cancel and set aside a
deed alleged to be a cloud on plaintiffs' title to a certain tract of land
in St. Louis County, consisting of 147.98 acres. The facts out of
which the controversy grows are substantially as follows:

James Willoughby, who died on the 26th day of February, 1875,
at the time of his death owned the land in fee and with his family
occupied it as a home. Willoughby left surviving him a widow,
defendant Mary Ann, and six children, all minors. Two of the chil-
dren died without issue or surviving spouse. The four remaining
are the plaintiffs in this case. The defendant, Mary Ann Willoughby,
died after the institution of the suit and pending the appeal. By
his will James Willoughby devised to his wife "her dower portion
under the provisions of the statute," and to his children the remain-
der of his estate in equal parts. No executor was named and one
Withinton was granted letters of administration with the will annexed.

Shortly before his death, on January 12, 1875, Willoughby and wife
gave a deed of trust on the land in question to secure the payment of
his notes therein described, one being a principal note for $3,000,
due three years thereafter, and six being interest notes, each for
$150, due 6, 12, 18, 24, 30 and 36 months after said date. In
the course of the administration of Willoughby's estate all of these
notes were presented by the holder, Charles L. Jones, and were al-
lowed and classified as demands of the fifth class. Pending an order
to sell the real estate to pay debts, made by the probate court, the
widow petitioned the court to appoint commissioners to assign her
dower and to set out the homestead of herself and the minor children.

Commissioners were appointed and in due course made report of their proceedings. That report on exceptions filed by certain creditors of the estate was disapproved and the widow thereafter appealed from the order of disapproval to the circuit court. While this appeal was pending, Jones, the holder of the notes heretofore referred to, caused the land to be sold at public sale by the trustee in the deed of trust in conformity with the provisions of that instrument. At such sale, had on April 14, 1879, Jones became the purchaser for the sum of $5010, which seems to have been the amount of his debt plus the expenses of the foreclosure. On the same day he received a deed of conveyance from the trustee. Two days later Jones, by quit-claim deed and for the expressed consideration of $6,000, conveyed the premises to the widow, Mary Ann Willoughby. On the same date, April 16, 1879, Mrs. Willoughby executed a deed of trust on the land to secure a cash loan of $4800 made to her by one Nitzschmann, as evidenced by a promissory note of that date, due two years thereafter and bearing interest from date at the rate of ten per cent per annum. Following these transactions the widow dismissed her appeal in the dower and homestead proceeding. On November 26, 1879, she borrowed $600 more and gave a second deed of trust on the land to secure it. On March 6, 1880, she conveyed the land by a general warranty deed to defendant William Brandes. The consideration named in the deed was $6,866.65. On May 26, 1923, Brandes and his wife for the expressed consideration of one dollar conveyed the land by general warranty deed to their daughter, defendant Dorothy Brandes, who on the same day and for a like consideration reconveyed to her father and mother.

Upon receipt of the deed from Mrs. Willoughby, in March, 1880, Brandes went into immediate possession of the land in controversy and has ever since occupied it, visibly exercising all the rights and prerogatives of exclusive ownership. And of these facts the plaintiffs have during the intervening years been at all times fully cognizant. This suit was instituted August 27, 1923. At the time of the trial, in October 1924, plaintiffs' ages were as follows: Lucy Briqueleur, sixty years; Joseph H. Willoughby, fifty-eight; Ben Willoughby, fifty-six; and Laura Budde, fifty.

Brandes paid off and discharged, at their maturity, all of the notes secured by the two deeds of trust given by Mrs. Willoughby and with which the land was encumbered at the time she conveyed to him.

Defendant, Mary Ann Willoughby, testified as a witness for plaintiffs. From her testimony we glean some additional facts now to be stated.

Pending the publication of the notice of sale of the land under the deed of trust heretofore adverted to, an arrangement was reached whereby Jones was to buy the land at such sale for Mrs. Willoughby,

take a deed from the trustee in his own name and then convey to her. This was done. She did not pay Jones $6,000, the consideration named in the deed from him to her, but $5010, the amount he bid for the land; and the greater part of that sum was realized from the proceeds of the $4800 loan, which had been negotiated for her by Jones. All of these things she told William Brandes prior to making him a deed. She did not receive from Brandes, $6,866.65, the consideration named in her deed to him, but only $1460. In this connection it should be said that plaintiffs offered to prove by Mrs. Willoughby that Brandes bought and she intended to convey to him her dower and homestead interest only. This proof on objection by defendants was excluded by the trial court. There was evidence tending to show that at the time of the conveyance to Brandes the value of the land had been variously estimated at from $8,000 to $14,000.

Other evidentiary facts will be noted, if necessary, in the course of the opinion.

The petition alleges in substance: that James Willoughby died on February 26, 1875, owning in fee simple the land in controversy; that said land was the home farm of deceased upon which he and his family were residing at the time of his death; that the reasonable value of said farm at said time exceeded $25,000; that plaintiffs, who were minors at the time of their father's death, are the surviving children and heirs at law of said James Willoughby, deceased; that defendant, Mary Ann Willoughby, is the surviving widow of said deceased and the mother of said children; that said Mary Ann was in possession of and managed and controlled said land from the death of said deceased until March 6, 1880; that the will of said deceased, which was duly probated, devised to his widow her dower as provided by statute, and to his children equal portions of his estate; that letters of administration were duly granted to "the parties entitled thereto;" that on the 8th day of July, 1880, said estate was finally settled and an "order of no further process" was made and entered of record by the probate court; that the widow's dower was never assigned; that Mary Ann Willoughby was the guardian of her said children; "that none of the right, title or interest of said plaintiffs in and to . . . said real estate, or to any part thereof . . . has ever been conveyed by them, or either of them, to any of the defendants . . ., nor has either of said plaintiffs ever authorized any person to convey or mortgage the same;" that on the 6th day of March, 1880, during the minority of the plaintiffs, defendant Mary Ann Willoughby, without authority, executed and delivered a pretended deed, in form a warranty deed, purporting to convey said property to the defendant William Brandes; that said pretended deed was made at his request, for a pretended considera-

tion of $6,866.65, and was duly placed on the records of St. Louis County; that said widow had no right, power or authority to execute said deed; all of which was well known to the defendant William Brandes prior to the execution and delivery thereof; that said Brandes took possession of said land under said deed and has since wrongfully withheld the same and clouded plaintiffs' title thereto by a deed pretending to convey the same to Dorothy Brandes, for the fraudulent purpose of depriving plaintiffs of their interest in and to said real estate; and that said alleged deed from the said widow to Brandes constitutes a cloud upon the plaintiffs' title. The petition closes with a prayer that the said deed from the widow, Mary Ann Willoughby, be canceled and for naught held, and that the defendants be enjoined from creating any liens on said property by transfer or otherwise, and for general relief.

To the foregoing petition defendants, except Mary Ann Willoughby, filed an answer and a cross-bill. In their answer, after admitting that James Willoughby at the time of his death owned the land in suit in fee simple, they aver that said Willoughby in his lifetime encumbered the land with a deed of trust in the nature of a mortgage; that after his death the trustee sold the land under and in conformity with the provisions of said deed of trust; that at such sale Charles Jones became the purchaser of the land and received a deed from the trustee conveying it to him; and that thereafter said Jones for a valuable consideration conveyed to Mary Ann Willoughby and subsequently she for a like consideration conveyed to the defendant, William Brandes. The answer also pleads laches and the ten-year Statute of Limitations in bar. The cross-bill is in form and substance similar to a petition in an action to determine title under Section 1970, Revised Statutes 1919.

Plaintiffs' reply to defendants' answer and their answer to defendants' cross-bill are both voluminous, but the gist of each is contained in the following excerpts from the reply:

"That said land was purchased at said foreclosure sale by defendant Mary Ann Willoughby for and on behalf of herself and her said children . . . through her agent, one Charles Jones, Jr., who was directed by said Mary Ann Willoughby to bid in said land at said trustee's foreclosure sale; . . . that the purchase price and consideration recited in said trustee's deed to said Charles Jones, Jr., was paid by Mary Ann Willoughby; that said Mary Ann Willoughby paid the purchase price at said trustee's sale aforesaid by executing a renewed deed of trust for $4800, which amount, together with other cash in the sum of $310 which she had, she used in the purchase of said land under said foreclosure. . . . That William Brandes knew full well that defendant Mary Ann Willoughby only had a life estate in said land and could not convey a fee thereto, and

through fraud, misrepresentation and deceit said William Brandes induced Mary Ann Willoughby to convey the land aforesaid to him . . . by representing to her that in order to convey her life estate interest to said land it was necessary for her to sign the warranty deed she did sign on March 6, 1880; and that defendant William Brandes knew at the time said Mary Ann Willoughby executed a deed to him that it was her intent and purpose to convey . . . her life estate only.''

The circuit court found all the issues for the defendants, both those tendered by the petition and those tendered by the cross-bill, and gave judgment accordingly. From such judgment plaintiffs prosecute this appeal.

I.   There are some preliminary matters to be disposed of before considering the real questions presented by the record.

(1)   After the cause had been heard and submitted, the trial court on the application of the defendants, without notice to plaintiffs' counsel and in their absence, set aside the submission in order that defendants might offer further evidence. Thereupon defendant

**Evidence After Submission.**

William Brandes was sworn. He testified in effect that he paid, as they fell due, all the notes secured by the two deeds of trust given by Mary Ann Willoughby after the land had been conveyed to her by Charles Jones. In connection with his testimony he produced and identified the canceled notes, and they were then put in evidence. This was all the evidence offered after the first submission had been set aside. After this evidence had been received a transcript of it was furnished plaintiffs' counsel and they were subsequently afforded an opportunity to cross-examine the witness, Brandes, and to offer countervailing evidence, if they so desired. Plaintiffs declining to avail themselves of such opportunity filed a motion to strike out the evidence. Their motion was overruled and they complain of the court's action in that respect.

The setting aside of a submission in an equity case in order that the parties, or either of them, may offer evidence inadvertently omitted is a matter resting broadly within the sound discretion of the court. There is nothing to indicate that there was any abuse of that discretion in the rulings just referred to. Appellants have not pointed out any resulting prejudice to them and the record discloses none. Their contention under this head is disallowed.

(2)   Appellants insist that the trial court committed error in excluding the proffered testimony of Mrs. Willoughby to the effect that, notwithstanding she gave Brandes a deed purporting to convey to

him the fee in the land therein described, she intended to convey
merely a life estate, and he at the time knew of such inten-
tion. But the ruling was obviously correct. In the absence
of fraud, accident or mistake, oral evidence is inadmissible
to vary, contradict or impeach a written instrument. It is true that
there are some averments of fraud ~~with respect~~ to the execution of
the deed in the reply, but there are none in the petition. And the
petition alone must furnish the basis for the relief to which the plain-
tiffs deem themselves entitled. This is so elementary that the citation
of authorities is considered unnecessary.

**Varying Deed.** *(margin)*

II. The evidence tends to show, and we find as a fact, that Mary
Ann Willoughby, the widow, was the actual purchaser of the land in
controversy at the trustee's sale. Consequently, she and her grantees
occupy no better position with respect to the title than they would
had the trustee conveyed directly to her instead of
through Charles Jones. The two deeds, the one from the
trustee to Jones and the one from Jones to the widow,
should therefore be regarded as a single conveyance—one from the
trustee to Mrs. Willoughby. The theory of plaintiffs' petition is that
this conveyance was a nullity. In this they are mistaken. It con-
veyed to Mrs. Willoughby the legal title to the fee; whether her hus-
band's heirs retained enforceable equities as against her depends upon
her relation to them and her prior relation to the title. These we
will endeavor to point out.

**Trustee's Deed.** *(margin)*

Under the homestead law in force in this State at the time of James
Willoughby's death. he being then seized in fee of the land in ques-
tion, the fee, as to the homestead, upon his death passed to and vested
in his widow. his minor children being entitled merely
to the enjoyment of such homestead with her until they
attained their majority. [Skouten v. Wood, 57 Mo.
380; Gragg v. Gragg, 65 Mo. 343; Rogers v. Marsh, 73 Mo. 64.] The
widow was also entitled to dower, which, owing to the size and value
of the tract of land, exceeded in extent her homestead. But her unas-
signed dower was not an estate in the land; it was nothing more than
a chose in action. [Carey v. West, 139 Mo. 146, 147.] So that at the
time of the trustee's sale Mrs. Willoughby owned the fee in so much
of the land as was necessary to constitute a statutory homestead, and
that was the only estate she had. She was not therefore a life ten-
ant, as appellants assert. She and her husband's heirs were co-owners
of the land. She was a cotenant.

**Homestead: Dower.** *(margin)*

There is nothing in the evidence which remotely suggests that Mrs.
Willoughby in collusion with the trustee brought about the fore-
closure sale for the purpose of enabling her to acquire the full title

to the land to the exclusion of her husband's heirs. The effect of the
sale as touching their interests must therefore be deter-
mined from equitable principles applicable to the pur-
chase by one cotenant of an outstanding title or lien
affecting the common property. The general rule in
such cases is: "The purchasing cotenant is regarded as holding the
claim so purchased in trust for the benefit of all his cotenants, in
proportion to their respective interests in the common property, who
seasonably contribute their share of his necessary expenditures."
[7 R. C. L. 858.] The rule, however, is not a hard-and-fast one, but
one of equitable cognizance which courts of equity mold and apply
so as to do justice among the tenants, the facts of the particular case
considered. [Rector v. Waugh, 17 Mo. 13, 17.] For example, it was
ruled in Becker v. Becker, 254 Mo. 668, and Wenzel v. O'Neal, 222
S. W. 392, that in the absence of fraud or collusion, a cotenant may
buy at either a judicial or mortgage sale and acquire title free from
any trust so far as the other cotenants are concerned. But in those
cases all the cotenants were *sui juris* and fully capable of protecting
their own interests. Facts somewhat analogous to those in the case
at bar were considered in McMichaels v. Reece, 194 Mo. App. 363,
366. It was there said:

"Here the cotenants of defendant are her minor children of whom
she is [the natural] guardian. They are helpless and must naturally
look to her for protection and we regard her as wholly disabled from
buying the land solely for herself and setting up against them an
antagonistic title. It would violate the trust imposed upon her in
relation to her children. . . . She holds the property in trust for
them to enjoy until the expiration of their homestead, when they be-
come of age, and the fee-simple title thereafter. In other words, they,
on becoming of age, can pay back to her their proper proportions
of the purchase money which she paid out and obtain from her a
deed to their respective fee-simple interests, subject to her homestead
right."

See also Peterson v. Larson, 285 Mo. 119.

The principles announced in these last cases should, we think,
govern the rule of decision in this. We accordingly hold that the
trustee's deed conveyed to Mrs. Willoughby the legal title in fee to
the land in question, burdened, however, with an equity to the extent
that she took it in trust for those of her cotenants who
might thereafter elect to participate in the benefits of
her purchase by contributing within a reasonable time
their share of the purchase money. [Freeman on Cotenancy & Parti-
tion (2 Ed.) sec. 156.] And as defendant, William Brandes, pur-
chased the title with notice of the facts, he took it subject to the

trust which was fastened on it in favor of the cotenants of his grantor. [Mills v. Hart, 24 Colo. 505.]

III. "The purchase made by a cotenant of an outstanding title or incumbrance is not void, nor does the interest so acquired by him, or any part of it, by operation of law, vest in his cotenants. . . . The right of a cotenant to share in the benefit of a purchase of an outstanding claim, is always dependent on his having, with-

**Delay.** in a reasonable time, elected to bear his portion of the expense necessarily incurred in the acquisition of the claim." [Freeman on Cotenancy & Partition, supra.]

It is said that the money used by Mrs. Willoughby in purchasing the land at the trustee's sale was not her own means, but was obtained by remortgaging the land. But even so, the indebtedness so incurred by her for the purpose of obtaining the purchase money had finally to be paid, and was paid in full by Brandes, her grantee, as a part of the consideration for the conveyance to him. This he did in 1882. What was the reasonable time thereafter within which his cotenants were bound to contribute their share of his expenditure in order to entitle them to a reconveyance of their former interests? In McMichaels v. Reece, supra, it was said that the cotenants in that case, who were minors at the time of the purchase of the outstanding encumbrance, could upon becoming of age pay back to the purchasing tenant their proper proportion of the purchase money and obtain a deed from her to their respective interests. The youngest plaintiff in this case had reached her majority more than thirty years before this suit was instituted. But neither she nor any of her co-plaintiffs has ever contributed, or given notice of election to contribute, any part of the purchase money required to purchase the land at the foreclosure sale. Not only that, they do not now in their bill offer to do so. Having failed for such an extended period of time to contribute or offer to contribute their ratio of the consideration actually paid for the trustee's deed, plaintiffs must now be deemed to have repudiated the transaction and abandoned its benefits. [Crockill v. Hutchinson, 135 Mo. 67.]

However, plaintiffs do not in this action seek to enforce the equitable right to have reconveyed to them the respective interests in the land which they had prior to the sale under the deed of trust, upon a proportionate contribution by them to the expenditure which was necessary to acquire the title at that sale. They have proceeded on the theory that the widow acquired no interest whatever in the land under the foreclosure sale, and that her deed to the defendant Brandes likewise conveyed nothing. Wherefore they ask that the latter deed be canceled as constituting a cloud on their title. But as has been pointed out, the deed from the trustee conveyed the fee, burdened

with certain equities in favor of plaintiffs, and that same title was by the widow's deed conveyed to Brandes. Those equities having been extinguished through the lapse of time, plaintiffs are without right or title of any description.

The judgment of the circuit court is affirmed. All concur.