**BEEDLE et al. v. CAMPBELL.***

**No. 11205.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 2, 1939.

A. E. L. Gardner, of Clayton, Mo., for appellants.

Richmond C. Coburn, of St. Louis, Mo. (Frank A. Thompson, Thomas L. Croft, and Thompson, Mitchell, Thompson & Young, all of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by appellee's intestate against appellants and two others, for damages on account of an alleged breach of trust. The jury awarded actual damages in the sum of $8750 and punitive damages in the sum of $5000. The original plaintiff was L. A. Folsom, who died before trial, whereupon his administrator was substituted as plaintiff. The defendants originally named were Horace G. Beedle, Carlton G. Haizlip, Richard Hassall, and Western Funeral Benefit Association. On demurrer to the petition, the action was dismissed as to the defendant Western Funeral Benefit Association, and during the trial plaintiff dismissed as to defendant Richard Hassall.

On August 14, 1922, E. Melvin Folsom, Frank H. Brown, Horace G. Beedle, Carlton G. Haizlip, and Richard Hassall, desiring to develop, lay out and sell lots for cemetery purposes in the suburbs of St. Louis, Missouri, formed a common law or business trust known as the Carlton Securities Company. 2500 shares of the par value of $100 each in the trust created were issued to the beneficiaries named. All of the beneficiaries, except L. A. Fol-

som, were named as trustees. At this same time, H. G. St. Clair and his wife conveyed 86.66 acres of land in St. Louis County, Missouri, to the Carlton Securities Company, subject to a deed of trust which they had executed securing an obligation of $150,000. The property was purchased for $165,000, $15,000 of which was paid in cash and the balance by notes of said H. G. St. Clair and his wife.

The trust agreement provided that the business of the trust should be transacted on a concurrence of at least four out of the five trustees. The trustees at once commenced to develop the cemetery property, and up to 1926 the business of the trust seems to have been successfully and satisfactorily carried on. A part of the property was platted into lots and given over to cemetery purposes. By the summer of 1927, sixteen to eighteen acres of the land had been developed for that purpose. Many lots had been sold to the public. About 1800 lots had been laid out, but not sold. Approximately seven acres had not been platted. Between the time of the creation of the trust and the summer of 1927, the trustees had spent large sums of money for improvements in the cemetery grounds. Not only had the improvements been paid for out of sales of the property, but the original debt had been reduced to $85,000.

Sometime in 1926, a disagreement arose between the trustees and they split into two factions, with E. Melvin Folsom and Frank H. Brown on one side, and Horace G. Beedle, Richard Hassall, and Carlton G. Haizlip on the other. As a result of this disagreement, and the requirement that four trustees must concur in action taken, no joint action was possible as neither side could get the requisite concurrence of four trustees to transact any business. On June 6, 1927, the trustees Brown and E. Melvin Folsom, together with L. A. Folsom, brought suit seeking the removal of the other trustees and the appointment of a receiver. At that time, all the trustees, as well as L. A. Folsom, knew that the outstanding debt of $85,000, with certain interest, was to become due on August 14, 1927. The receivership suit stopped the further sale of lots, and trustees Brown and E. Melvin Folsom ceased attending meetings of the trustees for a period of some three months.

On July 20, 1927, Beedle and Haizlip purchased the note and deed of trust securing it from the owner, taking title in the Western Funeral Benefit Association, a corporation, of which they were officers and which they controlled. This transfer was concealed from the other trustees. On July 27, 1927, trustee Brown learned that the deed of trust had been purchased by someone, at which time he wrote Beedle, requesting him to advise whether the purchase was for Beedle, or if not, for whom, and whether it was the purpose to have the deed of trust foreclosed or renewed. Beedle's letter of July 29, 1927, in reply, was noncommittal, but suggested that the details of handling this loan should come before the trustees as a whole for official action. On August 6, 1927, the trustees met to discuss the possible renewal of the loan. They passed a motion that Brown and Beedle should negotiate for a renewal of the loan on the most favorable terms that could be obtained. Nothing was apparently done pursuant to this authorization. After this meeting there was an interchange of letters between counsel for Brown, E. Melvin Folsom and L. A. Folsom, and counsel for Beedle, Haizlip and Hassall, and on October 11, 1927, counsel for Beedle and his associates notified counsel for Brown and Folsom that the holder of the note secured by the deed of trust insisted that the note be taken up in ten days, and if this were not done the deed of trust would be foreclosed. On October 24, 1927, he again wrote that the foreclosure notice would appear in the Watchman's Advocate on October 25th.

From the notice published, it appeared that the Western Funeral Benefit Association was the holder of the note and deed of trust, and a suit was then commenced by trustees Brown and E. Melvin Folsom and beneficiary L. A. Folsom, joining the trustees named in the deed of trust, the Western Funeral Benefit Association, and the other trustees, Beedle, Haizlip, and Hassall, as defendants, to enjoin the foreclosure by advertisement. The petition in that case set out the acts constituting the breach of trust. The court, on August 26, 1929, permanently enjoined the defendants from exercising the power of sale contained in the deed of trust, but granted to the holder, the Western Funeral Benefit Association, the right to file a petition in court to obtain a decree of foreclosure.

On March 31, 1931, the Western Funeral Benefit Association accordingly brought suit in the Circuit Court of St. Louis County, Missouri, to foreclose the deed of

trust. In this suit, the Carlton Securities Company, the defendants in the present action, and all other parties interested in the property, including L. A. Folsom, were made defendants. Trustees Brown and E. Melvin Folsom and L. A. Folsom, the original plaintiff in this action, answered, charging defendants Beedle, Haizlip and Hassall with breach of their trust, and pleading substantially the charges made in the present action. They prayed for a dismissal of plaintiff's bill and for a cancellation of the note and mortgage. On trial, the court entered decree of foreclosure for the full amount of the debt. The property was sold under this decree, bid in by the Western Funeral Benefit Association, and on May 6, 1933, a deed was delivered to it, which conveyed the property sold.

On July 15, 1932, L. A. Folsom commenced this action against Beedle, Haizlip, Hassall and Western Funeral Benefit Association. As already forecast, before the case was submitted to the jury, it was dismissed as to Western Funeral Benefit Association and Hassall. The remaining defendants, Beedle and Haizlip, appellants here, at the close of all the evidence moved for a directed verdict, which the court denied. The case was sent to the jury on instructions to which certain exceptions were saved. The jury having returned a verdict for the plaintiff, judgment was entered thereon, and this appeal followed.

In seeking reversal, appellants contend: (1) That appellee did not establish a case warranting a recovery of damages, and hence, it was error to deny their motion for a directed verdict; (2) the court erred in admitting evidence on the question of damages and in denying appellants the right to prove value by competent evidence; (3) the court erred in instructing the jury.

The action rests upon the alleged damage to the value of 250 shares of beneficial interest transferred to the original plaintiff, L. A. Folsom. It is appellee's contention that appellants Beedle and Haizlip wilfully and maliciously breached the duty which they owed appellee as his trustee, by purchasing the deed of trust and by foreclosing it instead of renewing it. The trust instrument under which L. A. Folsom was a beneficiary creates what is referred to as a business or common law trust. Such an organization imports an arrangement whereby property is conveyed to trustees in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may be holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest is divided, the certificates entitling the holders to share ratably in the income of the property and, on termination of the trust, in the proceeds. Under the trust agreement here, the property was placed in the hands of trustees, to be managed and operated for the use and benefit of the beneficiaries. In the instant case, all of the beneficiaries, except L. A. Folsom, were also trustees. The parties have treated the trust agreement in question as effecting a valid strict trust. Darling v. Buddy, 318 Mo. 784, 1 S.W.2d 163, 58 A.L.R. 493.

Appellants, as trustees, occupied a fiduciary relationship to the beneficiaries of the trust, which imposed a duty upon them to act for the beneficiaries, and not for themselves in antagonism to the interest of the beneficiaries. They were not entitled to derive any profit out of the trust, except their lawful compensation, and any profit made by them out of the trust should ordinarily inure to the benefit of the beneficiaries. In the instant case, the trustees were likewise beneficiaries, and the relationship gave rise to duties and responsibilities similar to that of partners. It is urged that the appellants breached their trust by failing to renew the loan which was secured by the trust deed on the property and which was maturing in August, 1927. In this connection, it should be observed that the debt secured by this trust deed was not the individual obligation of the trustees, none of them having signed the original notes. In order to renew the loan, however, it would be necessary that they individually obligate themselves by signing new notes for the $85,000 remaining unpaid. Prior to the time they purchased this note and secured an assignment of the trust deed, their associates, Brown, E. Melvin Folsom and L. A. Folsom, brought suit seeking to oust these appellants from their trusteeship, and asking for the appointment of a receiver. This resulted in the entire stagnation of the business. Brown was president of the trust, and he and his associates, upon filing the suit, absented themselves from all meetings of the trustees, and Brown as president called no meetings. There were some negotiations with reference to securing a renewal of the loan, and there were indications that the loan might be renewed,

802

but Beedle and his associates suggested that they hesitated to become personally liable on this loan in view of the pending suit seeking their removal as trustees and charging them with malfeasance, and seeking the appointment of a receiver. It was apparently their attitude that before they should enter into a personal obligation on the loan, the receivership suit should be dismissed, but this the Brown faction, through their counsel, declined to do.

The individual trustee, or any number less than that required in the trust agreement, could not act. All of these trustees had accepted this trusteeship, and in exercising the office and powers were equal and undivided. They must have acted on the authority of at least four of their members. In the event of refusal to join in a proposed act, less than four could not proceed. Under the undisputed evidence, there is no warrant for the conclusion that these appellants committed any actionable wrong for failure to secure an extension of this loan. As has been observed, this required the joint act of at least four of the trustees. There would seem to have been no greater duty upon them as individual trustees, than upon the other trustees. In these circumstances, the appellants secretly purchased the encumbrance against the trust property, paying the full value and amount therefor. Not only were they trustees, but they were practically cotenants with the other beneficiaries. In making this purchase, they committed a breach of their duty, and the property acquired was impressed with a constructive trust in favor of their coowners, on payment by such coowners of their portion of the price paid for the property. The violation of this duty to their coowners was possibly mitigated somewhat by the fact that they had a right to protect their interest in the trust property. Hardwicke v. Wurmser, Mo. App., 180 S.W. 455. We must assume, in view of the verdict of the jury, that appellants were motivated by self-interest in securing the assignment of this note and mortgage, but they were personally interested in this property and they may well have considered that they had a right to buy and hold the mortgage, even to the exclusion of the other beneficiaries under the trust, for the purpose of protecting their own interests. The purchase, even under these circumstances, however, was impressed with a trust in favor of their coowners. Becker v. Becker, 254 Mo. 668,

163 S.W. 865; Willoughby v. Brandes, 317 Mo. 544, 297 S.W. 54; Brown v. Howard, 264 Mo. 466, 175 S.W. 52; Smith v. Gerretson, 170 Minn. 268, 212 N.W. 453.

While the other beneficiaries had a right to share in this note and mortgage, this right could not be asserted without payment to these appellants of the proportionate share of the purchase price which each owed. This they failed to do. Since the assignment to the appellants was in contemplation of law, for the benefit of all the beneficiaries, each had a right to share in the benefits of the assignment upon payment of his share of the consideration. Arpe v. Brown, 227 Mo.App. 60, 51 S.W.2d 225. Appellants had the right, as against the other beneficiaries seeking to share in the benefit of the assignment, to hold the note and mortgage as security for what they had advanced. Smith v. Gerretson, supra.

No offer of contribution having been made to appellants, they sought to foreclose the mortgage by advertisement. Brown and his associates brought suit to enjoin the foreclosure under the power of sale, and in that suit alleged practically all the facts that are alleged in the action at bar. The court entered a decree prohibiting the foreclosure of the suit by advertisement, but permitted the parties to go into court to litigate their respective rights under the mortgage and this assignment. Foreclosure suit was accordingly brought, and all of the beneficiaries and others interested in the property or the issues were joined. The appellee in this action had an opportunity to demand in that suit that he be given the benefit of the assignment, which the court would undoubtedly have granted, subject, of course, to the right of appellants to collect from him his proportionate share of the consideration advanced. Apparently, appellee made no such offer.

It was because the appellants had improperly purchased this encumbrance that they were enjoined from foreclosing by advertisement, the purpose manifestly being to permit all the parties to assert their rights as beneficiaries in the court foreclosure suit. The foreclosure suit was specifically authorized by the decree in the injunction suit. It could, therefore, not have been an unlawful act to maintain the foreclosure suit. No appeal was taken from the decree entered in the injunction suit. The foreclosure suit resulted in a decree directing the sale of the property

for the satisfaction of the debt. This decree was not appealed from by appellee, nor any of the other parties. These appellants, acting thereunder, pursuant to their adjudicated rights so to do, could not, we think, have been committing an unlawful act. When the property was sold, it was so sold pursuant to a valid decree of court, and the appellee and other beneficiaries had the same right to become purchasers as did the appellants here.

The facts here are strikingly similar to those presented to the Supreme Court of Minnesota in Smith v. Gerretson, supra. In that case, plaintiffs and defendant had purchased a farm as a business venture. The vendor took back a purchase money mortgage for a part of the purchase price. The venture did not prove a business success and the defendant purchased the outstanding mortgage at a discount and sought to cut off the rights of his cotenants by foreclosure. The excluded cotenants brought suit for an accounting. The lower court held that they were entitled to share in the benefits of the assignment upon payment of their share of the purchase price. This, however, they refused to do, and judgment was entered confirming the ownership of the property in the defendant. In the course of the opinion in that case, the court said, 212 N.W. 454:

"We think the record very clearly reveals that Dr. Gerretson [defendant], at the time of the deal, thought he had the legal right to buy and hold the mortgage for his sole use and exclude plaintiffs from sharing in the bargain. In this he was mistaken because of the rules of law applicable to cotenants. But this mistake as to his legal rights, even if combined with a wrongful intention, did not forfeit his share or give plaintiffs more than the law would allow them, had there been no such mistake of legal rights or wrongful intent on the part of Dr. Gerretson. * * * Had Dr. Gerretson, with direct approval of plaintiffs, bought the mortgage and raised the funds as he did, and thereafter they had defaulted in the payment of their share, and Dr. Gerretson had then caused the mortgage to have been foreclosed in this same manner, * * * could there be any question but that both in law and equity the legal rights of plaintiffs and the defendants would have been exactly as the judgment provides? We think not. Since the validity of the foreclosure was in no manner assailed in this action, but the reverse, plaintiffs accepting it as legal and valid, they have by the judgment the full benefit of the deal with Mrs. Peterson, and even more, for they were separately allowed to redeem their share from the foreclosure. * * *

"In no view can plaintiffs, upon the facts presented by this record, be entitled to a money judgment against any one of defendants, and the court undertook to and did grant them all the relief they showed themselves entitled to." (Italics supplied.)

So, in the case at bar, the appellee had a right in the foreclosure suit, upon making proper contribution, to be adjudged part owner in the mortgage secured by appellants. But we are of the view that having failed so to do, he is not entitled to a money judgment in this case. We conclude that the court erred in denying appellants' motion for a directed verdict.

We think the evidence was otherwise insufficient to entitle appellee to a money judgment. Over objection of appellants, a witness was permitted to express his opinion as to the value of the property covered by the trust deed in the summer of 1927. The jury's verdict may well have been based upon this testimony. The trust deed was not foreclosed until 1933. Certainly, if the trust deed had not been foreclosed, appellee would have suffered no actual damages. Evidence of value in 1927 was not competent. Damages must be fixed as of the time the property was converted. Especially must that be true here, when the court judicially knows that between 1927 and 1933 there had been a marked decline in real estate values, which continued up to the time of the trial of the action. New York Life Ins. Co. v. King, 8 Cir., 93 F.2d 347; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093.

Appellants offered to prove that at the time of the decree of foreclosure, the certificates owned by the appellee and representing his interest in the property were worthless and had no market value. While the form of offer may be subject to criticism, we think proof of value of the certificates or of appellee's interest in the property at the time was competent and material.

The judgment appealed from is therefore reversed and the cause remanded for further proceedings consistent with this opinion.